NOTICE

Decision filed 01/05/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 231002

NO. 5-23-1002

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Vermilion County. |
| | ) | |
| v. | ) | No. 23-CF-384 |
| | ) | |
| RICKEY D. FORTHENBERRY, | ) | Honorable |
| | ) | Charles C. Hall, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court, with opinion.
Justices Welch and Cates concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendant, Rickey D. Forthenberry, appeals the circuit court of Vermilion County's October 10, 2023, order regarding the defendant's pretrial release pursuant to Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act).[1] See Pub. Act 101-652, § 10-255 (eff. Jan. 1, 2023); Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). For the following reasons, we affirm the circuit court's detention order of October 10, 2023.[2]

_____

[1]The Act has been sometimes referred to as the "SAFE-T Act" or the "Pretrial Fairness Act." Neither name is official, as neither appears in the Illinois Compiled Statutes or the public act. See *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

[2]Pursuant to Illinois Supreme Court Rule 604(h)(5) (eff. Dec. 7, 2023), our decision in this case was due on or before December 28, 2023, absent a finding of good cause for extending the deadline. Based

1

I. BACKGROUND

¶ 3    On July 3, 2023, the defendant was charged by information with one count of aggravated discharge of a firearm (a Class 1 felony), two counts of aggravated unlawful use of a weapon (a Class 3 felony), two counts of unlawful possession of a weapon by a felon (a Class 3 felony), and one count of possession of a firearm while not eligible for a Firearm Owners Identification (FOID) card (a Class 3 felony). On the same date, the circuit court held the defendant's first appearance and set bond at $200,000, with 10% to apply and no additional conditions of release. On July 21, 2023, the grand jury returned a true bill of indictment as to all six counts. The defendant remained in pretrial detention.

¶ 4    On September 29, 2023, the defendant filed a motion to reconsider his conditions of pretrial release pursuant to section 110-7.5 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-7.5 (West 2022)). On October 4, 2023, a notice of hearing was filed by defense counsel scheduling the defendant's section 110-7.5 motion for hearing on October 10, 2023. On October 10, 2023, the State filed a verified petition to deny defendant's pretrial release. The State alleged that defendant was charged with a qualifying offense under section 110-6.1(a)(1), (1.5), or (3) through (7) (*id.* § 110-6.1(a)(1), (1.5), (3)-(7)) and that he posed a real and present threat to the safety of persons or the community and that no condition or combination of conditions can mitigate the real and present threat to the safety of any persons or the community, based on the specific articulable facts of the case.

¶ 5    On October 10, 2023, the circuit court conducted a hearing on both the defendant's motion for reconsideration of pretrial release conditions and the State's petition to deny pretrial release.

---

on the high volume of appeals under the Act currently under the court's consideration, as well as the complexity of issues and the lack of precedential authority, we find there to be good cause for extending the deadline.

At the hearing, the State first noted the defendant's criminal history, which included three prior convictions for driving while license suspended, two Class A misdemeanor convictions in 2004 for domestic battery and resisting arrest, and a Class 4 felony conviction in 2010 for obstructing justice.

¶ 6　According to the State's proffer, on July 2, 2023, at approximately 1:30 a.m., officers heard gunshots and responded to the area of Kimball Street in Danville, Illinois. Officers received information that the shots may have occurred near or at 504 Kimball Street. As they were approaching, officers observed a black SUV leaving the area of the shooting and conducted a traffic stop on the vehicle. The defendant was driving the vehicle, and a passenger was located in the front passenger seat. Officers observed a black and silver .40-caliber Smith & Wesson semiautomatic pistol in the vehicle. The firearm was loaded with one round in the chamber. Officers also located a live .40-caliber round in the defendant's pocket. Further, officers observed multiple bullet holes in the defendant's vehicle. The defendant and the front seat passenger told officers that they were driving in the area of Kimball and Clarence Streets when someone shot at their vehicle. They then indicated that the defendant drove home, got a gun, returned to the scene, heard more gunshots, and then "fired back at the people theoretically shooting at him." A video of the incident was obtained and supports the defendant's claim that he did not fire until his vehicle was fired upon. The State argued that the defendant was dangerous based upon the seriousness of the offenses charged; the defendant's felon status, which prohibited him from possessing a firearm at the time of the alleged crime; and the defendant's willingness to leave the scene, return with a firearm, and shoot at people.

¶ 7　In response, defense counsel proffered a short summary of the facts. The only additional information given was that officers received a report from an individual who lived on Kimball

3

Street who reported that there was a big party going on next door, where her neighbors were firing guns. Defense counsel then argued that the traffic stop was conducted in violation of the fourth amendment and that any evidence obtained during the traffic stop was subject to suppression, leaving only the video, which did not show the vehicle's license plate. In addition, defense counsel argued that the defendant had an affirmative defense of self-defense to the offense of aggravated discharge because he did not fire until he was fired upon. Further, defense counsel argued that the defendant having fired a gun did not suggest a danger to persons or the community who were not using unlawful force against the defendant.

¶ 8    At the conclusion of the proceeding, the trial court ordered the defendant detained finding by clear and convincing evidence that (1) the proof was evident or the presumption great that the defendant had committed a qualifying offense; (2) defendant posed a real and present threat to the safety of any person or persons in the community, based upon the specific articulable facts of the case; and (3) no conditions could mitigate the real and present threat to safety. Specifically, the circuit court considered the nature and circumstances of the current offense, the seriousness of the offense, the weight of the evidence against the defendant, including the defense counsel's argument for suppression, and the defendant's prior criminal history. Further, the court was specifically concerned that the defendant returned to the area with a gun and "placed himself in a position where he had to return fire" and that the defendant was a convicted felon and cannot possess a gun. The trial court issued a written order of detention that day, providing the findings and reasons for its decision. In the order, the court made a handwritten notation that the hearing was held on the defendant's motion for reconsideration of pretrial release and the State's petition to deny pretrial release.

4

¶ 9    The defendant filed a timely notice of appeal on October 20, 2023. The Office of the State Appellate Defender (OSAD) was appointed to represent the defendant in this appeal and filed a memorandum in support of the Rule 604(h) appeal. The State did not file a response to the defendant's appeal.

¶ 10                                    II. ANALYSIS

¶ 11    In this appeal, the defendant used the approved standardized notice of appeal form for appeals brought under Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023). In the notice of appeal, the defendant indicated that he was appealing the order of October 10, 2023, and that he was seeking "Pretrial Release of Defendant." As grounds for relief, the defendant claimed that the State failed to meet its burden of proving by clear and convincing evidence that the proof was evident or the presumption great that he committed the offense charged. In support, the defendant argued that it was questionable whether officers had information indicating a vehicle was involved in the gunfire and that the State's evidence is subject to suppression. The defendant also claimed that the State failed to show by clear and convincing evidence that the defendant poses a real and present threat to the safety of any person or persons or the community, based on specific, articulable facts of the case and that no condition or combination of conditions could mitigate that threat. The defendant argued that he only returned fire after being fired upon and that there is video from which the defendant cannot be identified that establishes the defendant's version of events. Further, the defendant argued that a condition to stay away from the location of the shooting and not to possess any firearms would be sufficient to alleviate any dangerousness the defendant may pose.

¶ 12    OSAD filed a memorandum pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. Oct.19, 2023). In its memorandum, OSAD raised three issues. The first two issues are consistent

with and correspond directly to the defendant's arguments made in the standardized notice of appeal form. The third issue raised in OSAD's memorandum is a timeliness argument not initially raised in the defendant's notice of appeal.

¶ 13    Specifically, the three issues in OSAD's memorandum argue (1) the trial court erred in concluding that the State had proved that the proof was evident or presumption great that the defendant committed a detainable offense, where the State's evidence may have been the result of an unlawful search or seizure; (2) in the alternative, the trial court's determination that no condition or combination of conditions could mitigate the real and present threat to safety was against the manifest weight of the evidence; and (3) in the alternative, the trial court erred in considering the State's petition to deny pretrial release, because it was untimely.

¶ 14    The State did not file a memorandum in response.

¶ 15             A. Timeliness of State's Petition to Deny Pretrial Release

¶ 16    We first begin our analysis by briefly addressing the matter of forfeiture as it relates to the timeliness issue raised in OSAD's third argument of its memorandum. On appeal, the defendant acknowledges that he did not object to or move to strike the State's verified petition in the trial court. The defendant concedes that typically this would result in forfeiture of the issue but asks us to overlook said forfeiture under the doctrine of plain error. However, "forfeiture is a limitation on the parties and not the reviewing court, and we may overlook forfeiture where necessary to obtain a just result or maintain a sound body of precedent." *People v. Holmes*, 2016 IL App (1st) 132357, ¶ 65. Given that the proceedings in the case occurred shortly after the effective date of the Act and that the State has not argued for forfeiture, we will address the merits of this argument. We caution that our decision to overlook forfeiture is limited to this specific case, and we take no position on forfeiture in future cases.

¶ 17 The defendant's argument presents an issue of statutory construction. "The primary goal of statutory construction, to which all other rules are subordinate, is to ascertain and give effect to the intention of the legislature." *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 48. The best indication of the legislative intent is the plain language of the statute. *Id.* "The statute should be evaluated as a whole, with each provision construed in connection with every other section. When the statutory language is clear, we must apply the statute as written without resort to other tools of construction." *Id.*

¶ 18 Pretrial release is governed by article 110 of the Code (725 ILCS 5/art. 110 (West 2022)), as amended by the Act. Under the Code, a defendant's pretrial release may only be denied in certain statutorily limited situations. See *id.* §§ 110-2(a), 110-6.1. Upon filing a timely, verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e), (f).

¶ 19 Section 110-6.1(c)(1) of the Code addresses the timing of the State's petition. *Id.* § 110-6.1(c)(1). Section 110-6.1(c)(1) provides that the State may file a petition without prior notice to the defendant at the first appearance before a judge, or within 21 calendar days after arrest and release with reasonable notice to the defendant. *Id.* In this case, the defendant was arrested, and his bond was set prior to the effective date of the Act. Subsequently, the defendant filed a motion for reconsideration of the monetary condition of his bond, and the State then filed a petition to deny pretrial release in response. The defendant argues that the State was not allowed to file a

petition to deny pretrial release where the defendant remained in custody after having been ordered released on the condition of depositing security, and he relies on this court's decision in *People v. Rios*, 2023 IL App (5th) 230724. The defendant's reliance on *Rios* is misplaced, as *Rios* is procedurally distinguishable from the case at bar.

¶ 20    In *Rios*, the defendant was arrested and detained prior to the effective date of the Act, and the circuit court set bond, along with other conditions of pretrial release. *Id.* ¶ 3. The defendant, however, remained in pretrial detention. After the effective date of the Act, the State filed a petition to deny pretrial release. The circuit court granted the State's petition based upon its finding that the defendant should be detained according to the dangerousness standard, and the defendant appealed. *Id.* ¶¶ 5-6.

¶ 21    This court determined that the plain language of section 110-6.1(c)(1) (725 ILCS 5/110-6.1(c)(1) (West 2022)) set forth a deadline for the State to file a petition to detain. Specifically, this court determined that:

> "The State may file a petition to detain at the time of the defendant's first appearance before a judge; no prior notice to the defendant is required. Alternatively, the State may file a petition to detain the defendant within 21 calendar days after the arrest and release of the defendant; however, reasonable notice is to be provided to the defendant under this circumstance." *Rios*, 2023 IL App (5th) 230724, ¶ 10.

¶ 22    This court found that the exceptions to the above timing requirements set forth in section 110-6 (725 ILCS 5/110-6 (West 2022)) were not applicable to the defendant since the defendant had not been released following his arrest and no new offenses had been alleged. *Rios*, 2023 IL App (5th) 230724, ¶ 12. As such, this court determined that the State's petition to detain pursuant to section 110-6.1 was untimely and that the circuit court did not have the authority to detain the

defendant pursuant to the untimely petition. *Id.* This court went on to find that the defendant fell within section 110-7.5(b) of the Code (725 ILCS 5/110-7.5(b) (West 2022)) because he was a person who remained in pretrial detention, on or after January 1, 2023, after having been ordered released with pretrial conditions. *Rios*, 2023 IL App (5th) 230724, ¶ 14. Section 110-7.5(b) states that such a defendant "shall be entitled to a hearing under subsection (e) of Section 110-5." 725 ILCS 5/110-7.5(b) (West 2022). This court further found that, in reviewing and analyzing sections 110-6.1(c)(1), 110-6, and 110-5(e) (*id.* §§ 110-6.1(c)(1), 110-6, 110-5(e)), along with one another and the entire Code, defendants, such as the defendant in *Rios*, have the following two options:

> "Under sections 110-7.5(b) and 110-5(e), a defendant may file a motion seeking a hearing to have their pretrial conditions reviewed anew. Alternatively, a defendant may elect to stay in detention until such time as the previously set monetary security may be paid. A defendant may elect this option so that they may be released under the terms of the original bail." *Rios*, 2023 IL App (5th) 230724, ¶ 16.

¶ 23 This court came to the above conclusion because, although the plain language of section 110-1.5 of the Code (725 ILCS 5/110-1.5 (West 2022)) abolished the requirement of posting a monetary bail, it did not eliminate the option to post the previously ordered security, and some defendants may prefer the second option, as opposed to requesting a hearing. *Rios*, 2023 IL App (5th) 230724, ¶ 17.

¶ 24 In this case, like *Rios*, the defendant was arrested and had a cash bond set prior to the effective date of the Act—September 18, 2023. The defendant was unable to post bond, and he remained in pretrial detention. Unlike *Rios*, the defendant filed a motion to reconsider the conditions of pretrial release on September 29, 2023, pursuant to section 110-7.5 (725 ILCS 5/110-7.5 (West 2022)). Specifically, the defendant asked the court to remove the deposit of monetary

9

security as a condition of his pretrial release. On October 10, 2023, the State filed a responsive petition to deny pretrial release.

¶ 25  Section 110-6 of the Code addresses, among other things, the revocation of pretrial release and the modification of pretrial release conditions. *Id.* § 110-6. Section 110-6(g) provides, "The court may, at any time, after motion by either party or on its own motion, remove previously set conditions of pretrial release, subject to the provisions in this subsection. The court may only add or increase conditions of pretrial release at a hearing under this Section." *Id.* § 110-6(g). Section 110-6 further provides, "Nothing in this Section shall be construed to limit the State's ability to file a verified petition seeking denial of pretrial release under subsection (a) of Section 110-6.1 or subdivision (d)(2) of Section 110-6.1." *Id.* § 110-6(i).

¶ 26  Based upon the plain language of the Code, a defendant who was arrested prior to the implementation of the Act and who remains in detention after having been ordered released with conditions, including the posting of monetary security, has the option (a) to remain in detention until the previously set monetary security may be paid or (b) to file a motion to modify the previously set conditions of pretrial release under sections 110-7.5(b) and 110-5(e) of the Code (*id.* §§ 110-7.5(b), 110-5(e)). See *Rios*, 2023 IL App (5th) 230724, ¶¶ 16-17. Section 110-6(g) provides for the removal of previously set conditions of pretrial release upon motion by either party or on the court's own motion; it also provides for the increase of conditions of pretrial release at a hearing. 725 ILCS 5/110-6(g) (West 2022). If a defendant moves to modify the conditions of pretrial release, the State may file a responsive petition. See *People v. Gray*, 2023 IL App (3d) 230435, ¶ 14. Upon a defendant's motion to have his conditions of pretrial release reviewed, the trial court shall hold a hearing, during which the defendant may argue for the most lenient pretrial release conditions and the State may make competing arguments. *Id.*

¶ 27    Contrary to the defendant's argument, the State is permitted to file a responsive pleading in a situation such as this where a defendant was arrested and detained on a cash bond prior to the implementation of the Act and subsequently filed a motion seeking to modify the conditions of his pretrial release. Therefore, we reject the defendant's contention that the trial court erred when it considered the State's responsive petition.

¶ 28        B. Trial Court's Consideration of Evidence Potentially Subject to Suppression

¶ 29    Next, we turn to the defendant's first argument in his memorandum. The defendant argues that it was against the manifest weight of the evidence and an abuse of discretion for the trial court to conclude that the State had met its burden of proving by clear and convincing evidence that the proof was evident or presumption great that the defendant committed a detainable offense, where the State's evidence proffered at the hearing may have been the result of an unlawful search or seizure. Specifically, the defendant argues that the trial court "ignored" or improperly "deferred" consideration of the factor set forth under section 110-6.1(f)(6) of the Code (725 ILCS 5/110-6.1(f)(6) (West 2022)), the likelihood of suppression of the State's proffered evidence at the hearing. We disagree.

¶ 30    As set forth above, a defendant's pretrial release may only be denied in certain statutorily limited circumstances. In order to detain a defendant, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e), (f).

11

¶ 31    In considering whether the defendant poses a real and present threat to the safety of any person or the community, *i.e.*, making a determination of "dangerousness," the trial court may consider evidence or testimony concerning factors that include, but are not limited to (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Code (*id.* § 110-5). *Id.* § 110-6.1(g).

¶ 32    To set appropriate conditions of pretrial release, the circuit court must determine, by clear and convincing evidence, what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). In reaching its determination, the circuit court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the person's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* The statute lists no singular factor as dispositive. See *id.*

¶ 33   Our standard of review of pretrial release determinations is twofold. The circuit court's factual findings will be reviewed under the manifest weight of the evidence standard, such as the State's burden of presenting clear and convincing evidence that conditions of pretrial release would not protect any person or the community, that the defendant has a high likelihood of willful flight to avoid prosecution, or that the defendant failed to comply with previously ordered conditions of pretrial release. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008).

¶ 34   The circuit court's ultimate determination regarding the denial of pretrial release is reviewed for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. "An abuse of discretion occurs where the circuit court's decision is arbitrary, unreasonable, or fanciful or where no reasonable person would have taken the position adopted by the circuit court." *People v. Heineman*, 2023 IL 127854, ¶ 59. " '[I]n reviewing the circuit court's ruling for an abuse of discretion, we will not substitute our judgment for that of the circuit court, "merely because we would have balanced the appropriate factors differently." ' [*People v.*] *Simmons*, 2019 IL App (1st) 191253, ¶ 15 (quoting *People v. Cox*, 82 Ill. 2d 268, 280, 412 N.E.2d 541, 547 (1980))." *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11.

¶ 35   Section 110-6.1(f)(6) of the Code addresses evidence that may be subject to suppression at the detention hearing. 725 ILCS 5/110-6.1(f)(6) (West 2022). Section 110-6.1(f)(6) provides, "The defendant may not move to suppress evidence or a confession, however, evidence that proof of the charged crime may have been the result of an unlawful search or seizure, or both, or through improper interrogation, is relevant in assessing the weight of the evidence against the defendant."

*Id.* Thus, the defendant may not suppress evidence or a confession at the hearing but may argue that the evidence was obtained unlawfully and the court should assess less weight to that evidence against the defendant.

¶ 36    We have thoroughly reviewed the record on appeal in this matter. Here, the State provided sufficient evidence at the hearing to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant committed the alleged offenses. Officers heard gunshots in the area. They had received information that the gunshots had come from a specific area on Kimball Street. Officers conducted a traffic stop on defendant's vehicle leaving that area. Officers noticed bullet holes in the vehicle. Further, they discovered a loaded firearm in the vehicle and a live round in the defendant's pocket. The defendant and the front seat passenger told officers that they were driving in the area of Kimball and Clarence Streets when someone shot at their vehicle. The defendant then drove home, got a gun, returned to the scene, and fired back when he was shot at again. The defendant is a convicted felon and cannot own or possess a firearm. There is sufficient evidence for the trial court to find the State met its burden. Further, we find that the trial court properly complied with section 110-6.1(f)(6) when assessing the weight of the evidence against the defendant. Specifically, we note the following exchange that occurred on the record between the trial court and defense counsel:

> "THE COURT: Well, a couple points. One, to the defense, you may well have a motion to suppress that should be given serious consideration, but I'm not going to rule on a motion to suppress based on proffers today.
>
> MR. BRAKKE: Just so my argument is clear, your Honor. I apologize for interrupting you. I'm not asking for a motion to suppress today, but it is explicitly something that the Court—

14

THE COURT: I can look at the admissibility as a factor in making my decision. I agree. I just wanted to clarify, you know, at the appropriate time if you feel that you should file a motion to suppress, then get it on the calendar and we will hear it with proper evidence and in accordance with the rules of evidence."

¶ 37    The trial court made it a point to clarify on the record that section 110-6.1(f)(6) was a factor the court could consider in making its decision but that it would not be making an ultimate determination as to suppression, because it is explicitly not allowed at the hearing under the same section. The court did well in considering, to the extent allowed by section 110-6.1(f)(6), the potential for suppression, as it is relevant in assessing the weight of the evidence against the defendant. And thus, we disagree with the defendant's contentions on appeal that the trial court improperly "ignored" the factor or "deferred" it. We find that the court's ultimate determination to detain the defendant despite the potential for suppression of evidence was not against the manifest weight of the evidence or an abuse of discretion.

¶ 38                    C. Alternative Arguments in Notice of Appeal

¶ 39    Lastly, we turn to the defendant's second and alternative argument in his memorandum. In section II of OSAD's memorandum there are no facts, argument, evidence, or any legal authority presented. Instead, there is a title paragraph, and in lieu of argument, OSAD states, "With respect to this claim, Mr. Forthenberry rests on the argument in the notice of appeal."

¶ 40    In the defendant's standardized notice of appeal, the defendant checked the box indicating the State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case. In the lines provided below, the defendant states,

15

"Please see above, as it establishes that if Defendant is dangerous, it's to people who shoot [*sic*] at him on two different occasions for no reason. An order to stay away from the location of the shooting and to not possess any firearms or other dangerous weapons are conditions more than sufficient, given the specific facts of the case, to alleiate [*sic*] dangerousness, should some be found."

While the defendant does make some level of argument in his notice of appeal, it also references a separate argument contained in the notice of appeal that is not set forth in the memorandum. In essence, we are first directed by the memorandum to the notice of appeal, and then we are redirected to another portion of the notice of appeal not argued in the memorandum.

¶ 41     Rule 604(h), as amended due to the Act, provides a new procedure for these appeals. See Ill. S. Ct. R. 604(h) (eff. Oct. 19, 2023). Under Rule 604(h), the appellant has two options. The appellant may stand on the notice of appeal, or the appellant may file, but is not required to file, a memorandum. "The new provisions of the Code, however, cannot function independently from the larger, longstanding body of law governing appeals." *Inman*, 2023 IL App (4th) 230864, ¶ 10.

¶ 42     As a matter of practicality and considering the long-standing principles of appellate procedure, we find that, if a memorandum is filed, it will be the controlling document for issues or claims on appeal and we will not reference the notice of appeal to seek out further arguments not raised in the memorandum, except in limited circumstances, *e.g.*, to determine jurisdiction. The memorandum must contain some form of argument for each issue presented, along with justification for claiming entitlement to relief—like references to the record, evidence presented, or, if possible, legal authority. See Ill. S. Ct. R. 341(h) (eff. Oct. 1, 2020). The memorandum cannot simply reference or direct the court to the notice of appeal for its argument.

¶ 43    "Rule 604(h) requires the notice of appeal to include a description of the relief to be requested '*and the grounds for the relief requested*.' " (Emphasis in original.) *Inman*, 2023 IL App (4th) 230864, ¶ 12 (quoting Ill. S. Ct. R. 604(h)(2) (eff. Sept. 18, 2023)). Accordingly, "some form of argument is required, along with justification for claiming entitlement to relief—like references to the record, the evidence presented, or, if possible, legal authority." *Id.* A reviewing court "cannot be expected to formulate an argument for defendant out of whole cloth." *Id.* ¶ 13. "The appellate court is not a depository in which the appellant may dump the burden of argument and research." *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986). As a reviewing court, we are entitled to have the issues clearly defined, pertinent authority cited, and a cohesive legal argument presented. *Walters v. Rodriguez*, 2011 IL App (1st) 103488, ¶ 5.

¶ 44    In this case, the memorandum provides no argument in support and attempts to incorporate arguments in the notice of appeal into the memorandum by way of reference. Therefore, we find this argument forfeited.

¶ 45                                III. CONCLUSION

¶ 46    For the reasons stated, we affirm the October 10, 2023, detention order of the circuit court of Vermilion County.

¶ 47    Affirmed.

*People v. Forthenberry*, 2024 IL App (5th) 231002

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Vermilion County, No. 23-CF-384; the Hon. Charles C. Hall, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Carolyn R. Klarquist, and Benjamin Wimmer, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Patrick Delfino and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |