2024 IL App (1st) 241983-U

No. 1-24-1983B

December 20, 2024

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS,)<br><br>    Plaintiff-Appellee,<br><br>    v.<br><br>DIRK HUGO,<br><br>    Defendant-Appellant. | Appeal from the Circuit Court of Cook County.<br><br>Nos. 24 CR 5231,<br>24 CR 5232<br><br>The Honorable<br>Paul S. Pavlus,<br>Judge, presiding. |

_____

JUSTICE SHARON ODEN JOHNSON delivered the judgment of the court.
Presiding Justice Mikva and Justice Navarro concurred.

**O R D E R**

¶ 1     *Held*: We affirm the trial court's order denying defendant's motion to reconsider his pretrial release. The fact that the police allegedly told the press that " 'the attack was a targeted isolated attack and there is no known threat to the public' " does not render the trial court's findings against the manifest weight of the evidence, where a 67-year old victim identified defendant as the person who entered the victim's hotel room and hit the victim in the head with a gun, where the police subsequently observed defendant wearing body armor, with a loaded gun and with various narcotics and a scale, and where defendant has multiple felony convictions including two armed habitual criminal convictions.

¶ 2         Defendant-appellant Dirk Hugo, by and through his private counsel, brings this appeal under Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024) challenging the trial court's order entered on September 11, 2024, pursuant to, what is commonly known as, the Pretrial Fairness Act (PFA).[1] Under case number 24 CR 052310, defendant was charged with home invasion (720 ILCS 5/19-6(a)(2), (3) (West 2020)), armed habitual criminal, (720 ILCS 5/24-1.7(a) (West 2020)), aggravated battery causing great bodily harm to a person 60 years or older (720 5/12-3.05(a)(4) (West 2020)), unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2020)), aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1) (West 2020)), and aggravated unlawful restraint (720 ILCS 5/10-3.1(a) (West 2020)).  Under case number 24 CR 05233, defendant was charged with armed violence (720 ILCS 5/33A-2(a) (West 2020)), armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2020)), unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) West 2020)), possession of a controlled substance with intent to deliver (720 ILCS 570/402(a)(2)(A) (West 2020)), and aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1) (West 2020)). For the following reasons, we affirm the trial court's order denying defendant's motion to reconsider his pretrial detention.

¶ 3                                    BACKGROUND

¶ 4                                    I. Documents

¶ 5         On May 2, 2024, the State filed a verified petition for pretrial detention which the trial court granted the same day. The State alleged: (1) that, on April 14, 2024, defendant entered a

---

[1] In 2021, the General Assembly passed two separate acts that "dismantled and rebuilt Illinois's statutory framework for the pretrial release of criminal defendants." *Rowe v. Raoul*, 2023 IL 129248, ¶4 (discussing Pub. Act 101-652, § 10-255, 102-1104, § 70 (eff. Jan. 1, 2023) (amending 725 ILCS 5/art. 110) (the Pretrial Fairness Act) and Pub. Act 102-1104 (eff. Jan. 1, 2023) (the Follow-Up Act).

hotel room and struck the victim in the head with a gun causing a wound requiring stitches, and (2) that, two weeks later, on May 1, 2024, when the police arrested defendant, he was wearing body armor and had a loaded gun, various narcotics and a scale. The petition further alleged that the victim of the hotel attack identified defendant.

¶ 6    On the written detention order entered by the trial court on May 2, 2024, the trial court made handwritten findings that the proof was evident and the presumption great that defendant had committed the offenses of unlawful use of a weapon by a felon, possession of a controlled substance with intent to deliver, armed violence, and aggravated battery causing great bodily harm.  The court further found that defendant posed a real and present danger, where he was armed with a stolen handgun, was wearing body armor, and possessed a scale and narcotics wrapped for delivery. The court found that no condition or combination of conditions could protect the public in light of defendant's prior convictions which included convictions for armed habitual criminal, aggravated discharge of a firearm, aggravated battery causing great bodily harm, and unlawful use of a weapon by a felon.

¶ 7    The record on appeal does not contain the transcript from the original detention hearing on May 2, 2024.  The State alleges, and defendant does not dispute, that defendant did not appeal that ruling at that time.

¶ 8    In the court records that are part of our record on appeal, a handwritten half-sheet indicates that the trial court appointed an assistant public defender (APD) to represent defendant on May 2, 2024, and the note names the individual APD.  The handwritten notes on the May 23 half-sheet are confusing, but they appear to indicate that the Public Defender was discharged. The May 23 half-sheet contains a note with the APD's last name that is then crossed out, and an arrow from that note to another note that says "PD Dvcharged" *sic.*  The

typed "Case Summary" sheet indicates that the Public Defender was reappointed on June 6, 2024. The Case Summary also indicates that the case was continued by agreement on June 6 and again on June 18.

¶ 9        On June 24, 2024, defendant filed numerous *pro se* motions. A couple of days later, on June 26, 2024, the trial court referred defendant to be evaluated regarding his competence to represent himself.  However, a few days later, on August 6, 2024, privately retained counsel filed a motion for defendant's pretrial release. On August 6, 2024, counsel also entered an "Appearance" as "assistant counsel."

¶ 10        The counsel's August 6 motion alleged that the trial court's finding of dangerousness should be "discounted by several articles that indicated that 'police [indicated] that the incident was targeted and isolated with no known threat to the public.' " The motion alleged that a battered woman had contacted defendant regarding her abusive relationship with the victim prior to the hotel incident. The motion acknowledged that defendant "does have a significant record," but argued that he had "made strides to change his life."

¶ 11        The motion alleged various violations by the State of the PFA. First, defendant alleged a violation of the PFA's discovery requirement, claiming that he had not received copies of his criminal history, his written or recorded statements, the substance of any oral statements relied upon by the State, or any police reports. The PFA requires the State to tender copies of this information to defendant prior to a detention hearing.  725 ILCS 5/110-6.1(f)(1) (West 2022).

¶ 12        Second, the motion alleged a violation of the PFA's 90-day rule. Section 110-6.1(i) of the PFA requires that, if a court orders detention, a defendant must be brought to trial within 90 days of the detention order and that, if he is not, "he shall not be denied pretrial release." 725 ILCS 5/110-6.1(i) (West 2022). This section provides that "any period of delay resulting

from a continuance granted at the request of the defendant and any period of delay resulting from a continuance granted at the request of the State with good cause shown" shall be omitted. 725 ILCS 5/110-6.1(i) (West 2022). The motion claimed that "because [d]efendant has not been brought to trial as of August 2, 2024, he should not be denied pre-trial release."

¶ 13    Third, the motion argued that the trial court should consider a fourth amendment violation of defendant's rights when assessing the State's proof of the alleged crime. Section 110-6.1(f)(6) of the PFA provides that: "The defendant may not move to suppress evidence of a confession, however, evidence that proof of the charged crime may have been the result of an unlawful search or seizure *** is relevant in assessing the weight of the evidence against the defendant." 725 ILCS 5/110-6.1(\f)(6) (West 2022). The motion alleged that defendant's fourth amendment rights were violated when the police arrested him without a warrant.

¶ 14    On August 7, 2024, the trial court entered a notation on the half-sheet indicating that it had held a detention hearing and found that the State had shown by "clear and convincing" evidence that defendant had committed "Class X" offenses, that "no condition or combination of [release] conditions" would suffice, and that a mental health examination was still pending. The trial court also entered a written order stating that the defendant was "ordered to be detained." No transcript for the August 7 hearing appears in the record before us.

¶ 15    On August 30, 2024, the same privately retained counsel filed another motion for pretrial release in which counsel again alleged that the State had failed to provide certain required documents, that defendant should be released due to violation of the 90-day rule, and that news articles indicated defendant's lack of dangerousness. In addition, the motion alleged that the "State was allowed to file a subsequent Petition for Pre-trial Detention over Defendant's objection on August 7, 2024, with no new additional facts as required by

6.1(d)(2)" of the PFA. However, the only petition for pretrial detention in the record before us is the petition filed by the State on May 2.

¶ 16      This second motion also argued that the trial court erred by "ordering a competency evaluation for Defendant's fitness to stand trial for his attempts to represent himself and filing numerous Motions."

¶ 17      Regarding the 90-day issue, the second motion alleged that, on May 23, 2024, defendant was granted leave to proceed *pro se*, that the public defender was re-appointed over defendant's objection on June 6, and that the public defender agreed to continuances over defendant's objection until an appearance was filed by defendant's privately retained counsel. The motion alleged that defendant had consistently objected to delays due to a fitness evaluation and that all the allegedly objected-to delays resulted in a speedy trial violation.

¶ 18      The second motion also contested the place of trial on the ground that the arrest allegedly occurred in Arlington Heights, while the hotel was in Glenview. The motion argued that the charges stemming from the arrest must be transferred and, if not transferred, dismissed. In support, the motion cited section 1-6 of the Criminal Code of 2012 (720 ILCS 5/1-6) which provides in relevant part that "[c]riminal actions shall be tried in the county where the offense was committed." This court observes that both Glenview and Arlington Heights are in Cook County.

¶ 19      The motion further alleged that the State cannot prove an element of home invasion because the victim's girlfriend allegedly gave defendant authority to enter the victim's hotel room.

¶ 20      On September 11, 2024, the trial court held a hearing on defendant's motion, and the transcript for this hearing is the only transcript in the appellate record.

¶ 21                                    II. Transcript

¶ 22          Defendant was present with his privately retained counsel at the hearing on September 11. The assistant State's attorney (ASA) began the hearing by stating that defense counsel was "seeking the same relief that we did a hearing on already," on August 7, 2024. The court replied that it considered the current motion to be a motion to reconsider.

¶ 23          First, defense counsel stated that her client had informed her that he had objected to every delay and to representation by the Public Defender. Thus, counsel argued that the State had failed to bring defendant to trial within 90 days. Second, counsel asserted that her client had not received copies of required information. Third, counsel argued that newspaper articles indicated that defendant did not pose a danger. Fourth, counsel claimed that the court should not have ordered a "BCX" or mental health examination where counsel had not seen "any indications of mental illness." Fifth, counsel argued a "lack of jurisdiction" and an "improper place at trial." Counsel claimed that "because the case is based out of the Rolling Meadows district," it had to be heard there, rather than in Skokie, where the hearing was occurring. Counsel argued that this was because "cases shall be tried in this county where the offense occurred." (This court observes that both Rolling Meadows and Skokie are in Cook County.)[2]

¶ 24          Sixth, counsel claimed that "some of the counts" in the indictment were not "before the Grand Jury" and, therefore, should be dismissed. Seventh, counsel alleged that defendant's fourth, sixth and fourteenth amendment rights were violated. Eighth, counsel mentioned the victim's girlfriend, but counsel acknowledged, when asked by the court, that she was not

---

[2] The Circuit Court of Cook County is comprised of six districts, including Rolling Meadows and Skokie, and there is no statutory authority limiting cases by district within the same county.

present to give sworn testimony before the court.  When counsel asked the court to consider hearsay, the court told counsel to "move on" with her argument.

¶ 25    In response, the State noted, first, that if a crime occurs in Glenview, venue is proper in Skokie.  Second, the State argued that, if a defendant wants to attack an indictment, he has to file a motion indicating "a valid basis for doing so."  Third, the State observed that a defendant's fitness to stand trial may be raised by the defense, the State and/or the court and that, in the case at bar, it was raised by both the court and the State due to defendant's rambling and inarticulate statements on June 26, 2024. Fourth, the State asserted that defense counsel had alleged that defendant was not present "for some court date," and so the State went through every court date, noting that defendant was present for each one.

¶ 26    Fifth, the State argued that there was no violation of the 90-day rule. The State noted that the Public Defender was appointed on June 6, at the arraignment, and was given leave to withdraw when privately retained counsel filed her appearance on August 6. The State noted that, because of defendant's "rambling" during the June 6 and June 18 court dates, he was represented by the Public Defender and was not *pro se*. The State observed that the case had been continued by agreement on each court date until September 4 when counsel failed to appear and that was marked "motion defendant."  The State noted that "[i]t was then subsequently by agreement to today's date."

¶ 27    The State noted that "counsel has indicated that she's special counsel, that the defendant is somehow representing himself."  The State argued that it had never been declared by the court that defendant was *pro se* or that she was special counsel.  As a result, she is the counsel of record and the case has been proceeding by agreement, resulting in no violation of the 90-day rule.

¶ 28    Sixth, the State argued that pretrial detention was justified by the allegations in this case, by the fact that the charges included numerous Class X felonies and by defendant's significant criminal history which the State began to review.  However, the trial court cut off the list, noting that the court had heard defendant's criminal background numerous times before. The State asked if the court wanted it to review the factual allegations, and the court did not, noting that it had "heard all the same arguments on a prior occasion."

¶ 29    Giving its ruling, the court noted that "[a]ll of the arguments made today were made on a prior occasion," and that it still stood by its prior decision that there were no conditions or combination of conditions that could protect the community from defendant.

¶ 30    First, with respect to the proffered newspaper article, the court said that it had no idea who wrote the article or what the sources were and that, in any event, the determination had to be made by the court, not the reporter.

¶ 31    Second, the court denied counsel's motion to transfer one of the cases, noting that defendant was arrested in Arlington Heights, that Arlington Heights is in Cook County, and that the trial court was a Cook County court.

¶ 32    Third, the court agreed with the State that if counsel wanted to challenge the indictment, that had to be done "in a proper fashion," which had not been done here.

¶ 33    Fourth, the court noted that it had the power to order a "BCX" based on a defendant's conduct which it had done here. The court asked the State to reach out and find out why the examination had not yet been completed.

¶ 34    Fifth, after counsel asserted that her client had "a running demand" for trial, the court found that defendant did not have a running demand and that delays had "gone by agreement." When defendant tried to interject, the court instructed him that he was represented by counsel,

that he should not address the court, and that he needed to let his counsel do it. The court ruled: "You have been represented by counsel each and every time that you were before this Court [*sic*] by agreement. It's gone by agreement but for the one motion defendant date that your lawyer was not in court."

¶ 35    The court summarized the agreements as follows, starting with June 6:

> "Once again, it's already been spread of record 6/6 of '24, by agreement to 6/18. 6/18, by agreement to 6/[2]6. 6/26, by agreement 8/6, in person. 8/6, the case was advanced on [*sic*] July 8, previous order to stand, by agreement 8/6. 8/6, I gave permission to the Public Defender to withdraw by agreement, that was you counsel, to 8/7. 8/7, detention hearing, by agreement 9/4. 9/4, defense attorney not in court, motion defendant [*sic*] 9/19. It was motioned up again 9[/]6. 9/6 went to 9/11."

¶ 36    Defense counsel then said she was demanding trial. The court responded that it would put the case on for the next day, Thursday. Counsel protested that she had other matters. The court noted that it was Wednesday, and that the court would accommodate counsel by putting the matter on for Friday at 9 a.m. Counsel asked if she could appear by zoom, while her client appeared in person, and the court replied that, if defendant was present, then counsel needed to be present. The court explained that "you can't have it both ways," and that if they wanted to demand trial, then any continuance was up to the State. The State agreed to Friday, and the court adjourned until then. A written order was entered stating "Status; Defendant in Custody" and that the next court date was Friday, September 13, 2024.

¶ 37                    III. Notice of Appeal

¶ 38    On October 3, 2024, defendant filed a form "Notice of Appeal from Pretrial Detention or Release Oder Pursuant to Illinois Supreme Court Rule 604(h)." The blank line for "Date of Oder" was filled in as "September 11, 2024." The blank line for "Date(s) of Hearing(s) Regarding Pretrial Release" was filled in as " 8/6/2024, 8/7/2024, 9/11/2024." As previously noted, the September 11 date is the only date for which we have a transcript.

¶ 39    No points, facts or arguments were raised in the notice of appeal. However, on November 15, 2024, the same privately retained counsel filed an appellate memo with six single-spaced pages of argument, and on December 6, 2024, the State filed its response.

¶ 40    ANALYSIS

¶ 41    In his memo to this court, defendant asserts that the matters before this court are: (1) the trial court's denial of pretrial release and (2) "permission for granting of his interlocutory appeal regarding matters of constitutional, statutory and jurisdictional concern brought up as a matter of law in the underlying case." This is solely a PFA appeal, and it is being heard on that basis.

¶ 42    The memo further asserts that "[f]or the sake of judicial efficiency, Appellant hereby wishes to incorporate all his arguments in all his filings," and will "focus" his memo on certain arguments. For the sake of judicial efficiency, we will address only those arguments raised and fully argued in his memo. *People v. Forthenberry*, 2024 IL App (5th) 231002, ¶ 42 (if a memo is filed in a PFA appeal, it must contain argument for each issue in order for that issue to be considered on appeal).

¶ 43    Pretrial release is governed by Article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-1 *et seq* (West 2022)), and this article provides that a defendant's pretrial release may be denied only in certain statutorily limited situations. First, for pretrial release to be denied, the State must file a petition. 725 ILCS 5/110-2(a) (West 2022). Second, when a court considers the issue of release or detention, "[a]ll defendants shall be presumed eligible for pretrial release, and the State shall bear the burden of proving by clear and convincing evidence" that the following three propositions are true: (1) that the proof is evident or the presumption great that the defendant has committed a qualifying offense, (2)

that the defendant's pretrial release poses a real and present threat to the safety of any person or the community, and (3) that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-2(e) (West 2022).

¶ 44 To determine whether the defendant poses a real and present threat to any person or the community, the court may consider this non-exhaustive list of factors: 1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; 2) the history and characteristics of the defendant; 3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; 4) any statements made by or attributed to the defendant, together with the circumstance surrounding the statements; 5) the age and physical condition of the defendant; 6) the age and physical condition of the victim or complaining witness; 7) whether the defendant is known to possess or have access to any weapons; 8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or other form of supervised release from custody; and 9) any other factors, including those listed in section 110-5 of the Code (725 ILCS 5/110-5 (West 2022)). 725 ILCS 5/110-6.1(g) (West 2022).

¶ 45 Upon finding that the defendant poses a threat to the safety of any person or the community, the defendant's likely willful flight to avoid prosecution, and/or the defendant's failure to abide by previously issued conditions of pretrial release, the trial court must determine if pretrial release conditions will reasonably ensure the appearance of a defendant and the safety of any other person or the community and the likelihood of compliance with all the conditions of pretrial release.725 ILCS 5/110-5(a) (West 2022). The court must consider 1) the nature and circumstances of the offense charged; 2) the weight of the evidence against

the defendant; 3) the history and characteristics of the defendant; 4) the nature and seriousness of the specific, real and present threat to any person that would be posed by the defendant's release; and 5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. 725 ILCS 5/110-5(a) (West 2022).

¶ 46    The trial court's determination regarding the dangerousness and/or conditions of release are reviewed for an abuse of discretion. *People v. Simmons*, 2019 IL App (1st) 191253, ¶¶ 9, 15. An abuse of discretion occurs when the decision of the trial court is arbitrary, fanciful, or unreasonable, or when no reasonable person would agree with the position adopted by the trial court. *Id.*

¶ 47    A trial court's finding that the State presented clear and convincing evidence that mandatory conditions of release would fail to protect any person or the community, and/or that the defendant had a high likelihood of willful flight to avoid prosecution, or that the defendant failed to comply with previous conditions of pretrial release thereby requiring a modification or revocation of the previously issued conditions of pretrial release, will not be reversed unless those findings are against the manifest weight of the evidence. *E.g. People v. McFarland*, 2024 IL App (1st) 240615-U, ¶ 20. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill.2d 322, 332 (2008). Under this standard, we give deference to the trial court as the finder of fact as it is in the best position to observe the conduct and demeanor of the witnesses." *Deleon*, 227 Ill. 2d at 332.

¶ 48    Based on our review of the record, the trial court's determination that defendant met the standard of dangerousness, posing a real and present threat to the safety of any person or persons in the community, is not against the manifest weight of the evidence. Specifically, the

charges of home invasion and aggravated battery are listed as detainable qualifying offenses under the Code (725 ILCS 5/110-6.1(a)(1.5) (West 2022))[3] and the proof is evident and the presumption great that the defendant committed said offenses given the State's proffer of the victim's identification and the police officers' first-hand observations upon arrest. *People v. Conway*, 2023 IL 127670, ¶ 18 (it is well established that a single eyewitness identification is sufficient to sustain a conviction); *People v. Patterson*, 2022 IL App (1st) 182542, ¶ 67 (police officer's testimony that he saw the defendant with the firearm was sufficient to establish possession of it).

¶ 49    With respect to the trial court's finding of dangerousness, defendant argues on appeal, as he did in the court below, that certain statements allegedly made by the Glenview police to news media indicate that defendant is not a danger to the public. Defendant alleges that the police made statements that the attack was a targeted, isolated event and that there was no known threat to the public. The trial court found that it had no information about the author of the articles or the sources for the articles.

¶ 50    The record before us contains two articles. One lists an author, and one does not. While both articles refer generally to statements made by "police," neither article identifies its sources. Although a trial court may consider hearsay evidence, there must be some indicia of reliability, such as identification of the source of the hearsay. Further, the trial court found that the determination had to be made by the court, not a news reporter. We would add that the PFA requires any determination to be made by the court, not the police, after a careful consideration of all the relevant statutory factors. Defendant's argument based on hearsay

---

[3] Section 110-6.1(a)(1.5) provides that a court may detain a defendant if he poses a real and present threat to the safety of any person or person or the community, and he is charged with a forcible felony. The section then lists the qualifying forcible felonies, and the list includes home invasion and aggravated battery. 725 ILCS 5/110-6.1(a)(1.5) (West 2022).

from an unidentified speaker does not undercut the manifest weight of the evidence. This evidence includes defendant's criminal history which even counsel was forced to concede was significant, the victim's identification, the assault which defendant has yet to deny, the resulting head injury, and defendant's arrest wearing body armor, with a loaded gun and narcotics. *People v. Mancilla*, 2024 IL App (2d) 230505, ¶ 29 (the defendant's prior history of felonies involving guns demonstrate his dangerousness and disregard for conditions or restrictions); *People v. Lee*, 2024 IL App (1st) 232137, ¶ 26 ("multiple [prior] offenses in which [defendant] possessed a firearm when he was not permitted to do so" confirmed defendant's dangerousness).[4]

¶ 51        Second, defendant claims on appeal that the State failed to meet its burden of proving that no condition or combination of conditions could mitigate the threat posed by defendant, where defendant resides in Arlington Heights and the victim resides in Glenview. This court observes that this short distance did not apparently protect the victim from the underlying offense. In addition, this argument was not made to the court below, so it is both forfeited and not persuasive.

¶ 52        Third, defendant claims on appeal, as he did in the court below, that he did not receive copies of required documents. 725 ILCS 5/110-6.1(f)(1) (West 2022). The PFA requires the State to "tender,"[5] prior to a detention hearing, copies of the defendant's criminal history, any written or recorded statements, the substance of any oral statements made by any person relied

---

[4] As noted above, the trial court found in its written May 2, 2024, detention order that no conditions could protect the public in light of defendant's prior convictions for armed habitual criminal, aggravated discharge of a firearm, aggravated battery causing great bodily harm and unlawful use of a weapon by a felon.

[5] As a verb, the word "tender" means to "offer or present (something) formally." Google Dictionary, https://www.google.com (search "definition tender") (last visited December 11, 2024) (Google's English dictionary is provided by the Oxford's English dictionaries.)

on by the State in its petition and any police reports in the prosecutor's possession at the time of the hearing. 725 ILCS 5/110-6.1(f)(1) (West 2022). Defendant's memo on appeal alleges that, prior to the original detention hearing, he did not receive any of these documents. However, at that time, defendant was represented by the Public Defender; thus, any documents would have been tendered to his counsel. His memo further alleges "that he did not receive a copy of any of the substance of the complaints for the previous detention hearing when he was represented by the Public Defender." Defendant does not allege that his counsel lacked copies of the required documents; rather, his issue seems to be that the copies were given to the Public Defender when defendant allegedly wanted to act *pro se* and allegedly objected to the Public Defender's representation. The record on appeal does not contain the transcript from the original detention hearing on May 2, 2024, and defendant did not appeal that ruling at that time. Present counsel does not allege that she sought and was refused copies. Based on this record, we cannot find a failure by the State to tender copies of required documents.

¶ 53    Fourth, defendant alleges on appeal, as he did in the court below, that the PFA's 90-day rule was violated. The PFA requires that, if a court orders detention, a defendant must be brought to trial within 90 days of the court's detention order and that, if he is not, "he shall not be denied pretrial release." 725 ILCS 5/110-6.1(i) (West 2022).

¶ 54    Like the prior claim regarding a lack of required documents, the 90-day claim also appears to be a complaint regarding appointment of the Public Defender. In the factual background section of his appellate memo, defendant asserts that he was permitted to represent himself on May 23, 2024; that on June 6, 2024, the Public Defender was reappointed over defendant's objection; and that the Public Defender agreed to a continuance to June 18, 2024, which defendant allegedly objected to. Defendant asserts that the Public Defender agreed to

more continuances, which defendant allegedly continued to object to, until the Public Defender was replaced by defendant's privately retained counsel.

¶ 55    In its appellate response, the State concedes that, at the detention hearing held on May 2, 2024, defendant's case was continued "motion State" until May 23, 2024, and it is unclear whether the continuance from May 23, 2024, to June 6, 2024, was by agreement. However, on June 6, the Public Defender was reappointed to represent defendant, and from June 6 through September 4, the continuances were agreed continuances. On September 4, the case was continued because defendant's counsel was not present. From September 6 through September 13, which is two days after the order appealed from, the case was continued by agreement.

¶ 56    Regarding this claim, and starting with the June 6 date, the trial court found: "You have been represented by counsel each and every time that you were before this Court [*sic*] by agreement. It's gone by agreement but for the one motion defendant date that your lawyer was not in court."

¶ 57    Even accepting the State's concessions regarding May 2 through June 6, 2024, we cannot find 90-days' worth of delay before the order appealed from; and, thus, we do not find this argument persuasive. Defendant also argues that the trial court was required to find that continued detention was necessary and that "[t]his was not done at all of Defendant's subsequent hearings." Without any specifics or even an allegation as to which dates, this claim is waived. *Forthenberry*, 2024 IL App (5th) 231002, ¶ 42 (if a memo is filed in a PFA appeal, it must contain argument for each issue in order for that issue to be considered on appeal).

¶ 58    At the end of his appellate memo, defendant raises claims about the indictment and claims that he will not receive a fair trial. These claims are not relevant to the PFA appeal before us and are not considered.

¶ 59                                                  CONCLUSION

¶ 60          For all the foregoing reasons, we do not find defendant's appellate arguments persuasive, and we affirm the trial court's order denying defendant's motion to reconsider his pretrial detention.

¶ 61          Affirmed.