2024 IL App (2d) 230475
Nos. 2-23-0475 & 2-23-0477 cons.
Opinion filed February 7, 2024

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Nos. 23-CF-2319 23-CF-2323 |
| ROBERT A. ACOSTA, | ) ) | Honorable Elizabeth K. Flood, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justice Kennedy concurred in the judgment and opinion.
Presiding Justice McLaren specially concurred, with opinion.

**OPINION**

¶ 1    Defendant, Robert A. Acosta, requests that we vacate the circuit court's orders granting the State's verified petitions in these consolidated appeals to deny him pretrial release pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act).[1] See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul,* 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18,

---

[1]The Act is also commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act.

2023). Specifically. defendant contends that (1) the State failed to prove that he committed a detaina le offense in case No. 23-CF-2323, (2) the dete tion orders from these appeals are duplicative and one should be dismissed, and (3) the no-contact order imposed as a conditii.m, of etention was improper. For the following reasons, we affirm.

I. BACKGROUND

On October 30, 2023, defendant was charged in case No. 23-CF-2319 with criminal damage to property (720 ILCS 5/21-l(a)(l) (West 2022)) and three counts of domestic battery *(id.* 12-3.2(a)(l), (2)). He was also charged, in case No. 23-CF-2323, with home invasion causing injury *(id* § 19-6(a)(2)), criminal trespass to residence *(id* § 19-4(a)(2)), battery causing bodily harm *(id.* § 12-3(a)(l)), and criminal damage to property *(id.* § 21-l(a)(l)).

The same day, the State filed petitions to detain in *pot* c_ases pursuant to section. 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)), as amended by the Act. The State argued that home invas m (No. 3-CF-2323) and domestic battery (No. 23- CF-2319) were detainable offenses and t at de end nt posed a real and present threat to 1h safety of any person or the community.

Also, this same day, a hearing commenced on the State's petitions to detain. The State proffered that defendant battered Evelyn Garcia, his children's mother, at 4:45 a.m. on October 29. 2023, by shoving her, hitting her in the eye with a lemon, trying to pour Nyquil in her eye, and punching her so hard with a closed fist that she fell backwards into the bathtub. Defendant also broke her cell phone and confiscated her vehicle keys to prevent her from obtaining help. Garcia had numerous injuries that were visible to police, including bruises on her arm and shoulder. Several hours later, defendant appeared at the residence of some of Garcia's family members and began banging on the windows and doors, demanding to see his children. Defendant then forced

his way into the residence by breaking through a locked door. After he entered the residence, he shoved Garcia's relative, Juan Carlos, who fell down 10 steps into the basement. Carlos the_n returned upstairs and fought with defendant to keep him out of the house. During this struggle, another door inside the residence was broken.

¶ 6 The State also averre d that defendant had a 2011 conviction of domestic battery. a 201 4 conviction of manufacturing/delivery of cannabis, 2015 and 2018 convictions of possession of a controlled substance, and a 2017 conviction of misdemeanor criminal damage to propert;r.

7 The State asserted that defendant posed a real and present threat to the safety of individuals involved in these cases and that there were no conditions that could mitigate this threat, because defendant had a history of violating court orders. For instance, defendant failed to appear in court multiple times in case No. 11-CM-1548 and was unsuccessfully discharged from probation and sentenced to jail i.n that case; defendant failed to appear several times in case Nos. 14-CF-l 549 and 15-CF-1445, after which he was unsuccessfully discharge from probation and sentenced to imprisonment; and he failed to appear in case No. 17-CM-1399 and either failed or missed se eral standardized drug screenings that were ordered in that case. The State also argued that defendant was a danger because his behavior in the instant cases showed that he was so determined to get to Garcia following the incident alleged in case No. 23-CF-2319 that he followed her to another residence later in the day.

¶ 8 In response, defense counsel argued that defendant had only one prior conviction of a dangerous offense-in 2011-was not presently on probation, had no access to weapons, and had nothing else in his record that was dangerous or violent. Counsel asserted that defendant struggled with substance abuse and that his threat to the victims in this case would be mitigated by putting

him on house arrest, ordering him to attend inpatient treatment, requiring standardized drug testing, or ordering him to wear a Secure Continuous Remote Alcohol Monitor (SCRAM) bracelet.

¶ 9     The circuit court ordered defendant detained, finding by clear and convincing evidence that the proof was evident and the presumption great that defendant committed the offenses of home invasion, domestic battery, criminal damage to property, and trespass to residence. It based its conclusion on the sworn police synopsis, the parties' proffers, the information contained in the public safety assessment report, and the State's petitions. The court also stated that it relied on the nature and circumstances of defendant's offenses, as defendant was violent and caused visible injuries to Garcia nd then later caused severe injury to Carlos after breaking into Garcia's family members' residence. The court also found that defendant posed a real and present threat to the safety of the individuals involved in these cases and the community and that no less restrictive conditions could mitigate the threat.

¶ 10     Thereafter, defendant timely appealed both decisions, using the form notice of appeal promulgated under Illinois Supreme Court Rule 606(d) (eff. Oct. 19, 2023). On December 14, 2023, the State filed a motion to dismiss the appeal in each case, arguing that defendant failed to state his grounds for relief in each respective notice of appeal. On December 26, 2023, the Office of the State Appellate Defender (OSAD) responded. We ordered the motions taken with the case and consolidated the cases on appeal on January 2, 2024. On January 3 and 8, 2024, OSAD submitted separate Illinois Supreme Court Rule 604(h) (eff. Dec. 7, 2023) memoranda. On January 18, 2024, the State submitted its memorandum opposing defendant's appeals.

¶ 11                                        II. ANALYSIS

¶ 12                                A. Motions to Dismiss the Appeals

¶ 13 Preliminarily, we address the State's arguments that we should dismiss the appeals because defendant did not, as required by Rule 604(h), describe *in* his notices of appeal the relief requested. We decline to dismiss the appeals on this basis, as the defect is not jurisdictional. See, *e.g., People v. Presl y,* 2023 IL App (5th) 230970, ¶ 24-26; *People v. Wetzel-Connor,* 2023 IL App (2d) 230348-U, ¶ 18.

¶ 14                                                  B. Forfeiture and Abandonment

¶ 15 As a threshold matter, the parties address forfeiture and ineffective assistance of counsel in their memoranda and response, asserting that defendant failed to raise before the circuit court his claims that (1) the State failed to prove that he committed a detainable offense in case No. 23-CF-2323, (2) the detention orders from these appeals are duplicative and one should be dismissed, and (3) the no-contact order imposed as a condition of detention was improper. In the notices of appeal, defendant also checked boxes asserting that the State failed to prove by clear a1_1d convincing evidence that he posed a real or present threat to the safety of any person or the community and that no conditions of release could mitigate this threat. These issues were not elaborated on in the notices of appeal and were not addressed in OSAD's memoranda. Of course, " 'forfeiture is a limitation on the parties and not the reviewing court, and we may overlook forfeiture where necessary to obtain a just result or maintain a sound body of precedent.' " *Wetzel-Connor,* 2023 IL App (2d) 230348-U, ¶ 26 (quoting *People v. Holmes,* 2016 IL App (1st) 132357, ¶ 65).

¶ 16 We do not think it unreasonable that defendant did not previously raise the arguments introduced in OSAD's memoranda before the circuit court, given that the State filed its petitions when the procedures and provisions at issue were recently enacted, the cases now relied on by the parties were not yet decided, and defendant quickly initiated this appeal. Nor does applying

forfeiture to those issues in the memoranda serve the interest of creating or maintaining a sound body of precedent. As such, we are inclined to relax forfeiture in this case, as it raises important issues in the developing body of law under this new statutory regime. We will not, however, address the issues raised only in the notices of appeal and not included in OSAD's memoranda. See *People v. Forthenberry,* 2024 IL App (5th) 231002, ¶¶ 41-42 (finding that OSAD's memorandum controls the issues addressed on appeal); *People v. Rollins,* 2024 IL App (2d) 230372, ¶ 22 (finding defendant abandoned those Rule 604(h) claims raised in the notice of appeal but not addressed in OSAD's memorandum). However, regardless of forfeiture, defendant's claims raised in the memoranda fail because, as the following will show, there is no error. See *People v. Bannister,* 232 Ill. 2d 52, 65 (2008) (noting that the first step in a plain-error analysis is to determine whether error occurred at all, because, if there was no error, there can be no plain error); *People v. Easley,* 192 Ill. 2d 307, 329 (2000) ("[I]t is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel' appraisal of the merits is patently wrong."); see also *People v. Ivory,* 217 Ill. App. 3d 619, 625 (1991) (finding no ineffective assistance of counsel because there was no error).

¶ 17                       C. Detainable Offense

¶ 18    Defendant contends that the State failed to prove that he committed a detainable offense in case No. 23-CF-2323, because it failed to present clear and convincing evidence of every element of home invasion. We reject defendant's argument.

¶ 19    The Act amended the Code by abolishing traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. See 725 ILCS 5/110-1.5, 110-2(a) (West 2022). Section 110-6.1 (e) of the Code presumes that all persons charged with an offense are eligible for pretrial release. *Id* § 110-6.1(e). However, a defendant's pretrial release may be denied

in certain statutorily limited situations (qualifying offenses). *Id,* §§ 110-2(a), 110-6.1. Upon filing a timely verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has commi:tted a detainable offense, that the defendant's pretrial release poses a real and present threat to the safetl of any person or the community or a flight risk, and that less restrictive conditions would not avoid the real and present threat to the safety of any person or the com unity and/or pr vent the defendant's willful flight from prosecution. *Id.* § 110-6.l(e), (f).

¶ 20    If the circuit court finds that the State proved a re. at: l l pre_sent threat to the safety of any person or the community or the defendant is likely to flee to avoid prosecution, the circuit court must determine which pretrial release conditions, "if any, will reasonably ensure the appearance of [the] def ndant as required or the safety of any other person or the community and.the likelihood o( co_mpliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). However, if the court determines that the defendant should be detained, the court must make written findings summarizing the reasons for detention, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or the community, based on the specific articulable facts of the case, or prevent the defendant's willful flight from prosecution. *Id.§* 110-6.l(h)(l).

¶ 21    Our standard of review is twofold. We review under the manifest-weight-of-the-evidence standard the circuit court's factual findings. *People v. ,Trottier,* 2023 IL App (2d)230317, ¶ 13. A finding is against the manifest weight of the evidence only when the finding is unreasonable. *In re Jose A.,* 2018 IL App (2d) 180170, ¶17. We review for an abuse of discretion the circuit court's ultimate determination regarding pretrial release. *Trottier,* 2023 IL App (2d) 230317, ¶ 13. An

abuse of discretion occurs only when the circuit court's decision is unreasonable. *People v. Williams,* 2022 IL App (2d) 200455, ¶ 52.

¶ 22 According to defendant, the State failed to present any evidence that he intentionally caused injury to Carlos after he broke into a residence at 910 Sarah Lane in Aurora. As charged, a person commits home invasion where he or she knowingly, and without authority, enters the dwelling of another knowing there is an occupant present and intentionally causes an injury to someone therein. 720 ILCS 5/19-6(a)(2) (West 2022).

¶ 23 The State's proffer related that defendant followed Garcia to an Aurora residence hours after an initial domestic dispute. While there, defendant began banging on the windows and doors of the residence, demanding to see his children. Ultimately he forced his way into the home by breaking through a locked door. Once inside, defendant pushed Carlos hard enough that he fell down 10 steps into the basement of the home. After Carlos got up, he fought with defendant to keep him out of the house; in this struggle, an interior door was also broken. Defendant argues that, at the hearing, the State offered "no evidence at all of injury." However, the police synopsis indicated that Carlos may have suffered a concussion, as he was vomiting upon their arrival. Carlos was examined by paramedics and signed a medical release; however, he stated that he would go to the hospital later that day. The circuit court indicated in its findings that it considered both the State's proffer and the police synopsis in making its determination. It is not against the manifest weight of the evidence, based on this information, for the circuit court to find that the State met its burden to show that defendant satisfied every element, including the injury prong, of home invasion. Accordingly, we conclude that the circuit court did not err in determining that defendant committed a qualifying offense, which resulted in his detention.

24 D. Duplicative Trial Court Orders

Next, defendant contends that the circuit court's detention orders in case Nos. 23-CF-23,19 and 23-CF-2323 were duplicati e and one should be vacated because it does not meet th requireme ts of section 110-6.l(d)(2). We find defendant's interpretation of section 110-6(d) unpersuasive.

We review *de novo* issues of statutory interpretation. *People v. Minssen,* 2024 IL App (4th) 231198, 17. When interpreting a statute, our objective is to .scertain and effectuate the legislature's intent. *Id.* The most reliable indicator of legisl'!-tive intent is the plai_n and o dinary meaning of the statute's langua_ ge; however, we view the statute in its entirety. *Id.* Accordingly, "we 'may consider the reason and necessity for the.law. the evils it was intended to remedy, and its ultimate aims.' " (Internal quotation marks omitted.) *Id.* (quoting *People v. Jones,* 2023 IL App (4th) 230837, 113).

Here, defendant had two cases pending contemporaneously in the circuit court (case Nos. 23-CF-2319 and 23-CF-2323). In each case, the State filed a petition to detain, Defendant now argues that one of the State's petitions to detain was a "second petition" within the meaning of section 110-6.1(d)(2) and that, because the petitions were identical-the later-filed petition did not offer "any new facts not known or obtainable at the time of the filing of the previous petition"- one of the detention orders should be vacated. 725 ILCS 5/110-6. l(d)(2) (West 2022). In turn, the State asserts that each case was separate, so it properly filed an initial petition to detain in each case. We agree with the State. We conclude that amended article 110 of the Code refers to a defendant's separate individual case and the actions that may be taken *in each case.* We find that the legislature intended this result based on a holistic reading of the Code. For instance, the Code states that a petition to detain may be filed after the defendant's first appearance before a judge. 725 ILCS 5/110-6.l(c)(l)·(West

2022); *People v. Clark,* 2023 IL App (1st) 231770, **¶,¶** 19-20. The first appearance is, generally, something that happens once *per case* after the case is initiated. See *People v. Budzynski,* 333 Ill. App. 3d 433, 439 (2002) (noting that, as with other crir;ninal cases, when a new criminal contempt proceeding is filed, a first appearance ocsurs where the defendant is advised of the charges agai_nst him, bond is set, and counsel is appointed); see also Ill. S. Ct. R. ?04 (eff. Sept. 18. 2023) (noting in traffic offenses the first appearance must occur within the first 60 days of a case). Logicall , it follows that the potential to file an initial petition to detain is triggered by the inception of a new case, not any pending cases a defendant may have. That is, a petition to detain may be filed by the State, in line with timing requirements wider the Code, in any *new* case, and the rules regarding a "second or sub equent" petition apply only where an initial petition has already been filed within th e same case. It would be illogical to allow only one initial bond petition *per defendant,* when one defendant may have multiple cases pending, e,ven in multiple jurisdictions. A cordingly, we find that sectio 110-6. l (d)(2) refers to the filing of a "second 0! subse9uent petition" *in the .same_case.* 725 ILCS 5/110-6.l(d)(2) (West 2022). Because the filings here occurred in separate c ses, they were not duplicative and, thus, both or ers will remain undisturbed.

**¶** 28                                    E. Detention Conditions

**¶** 29     Finally, defendant argues that the circuit court's no-contact order is not an authorized condition of detention under the Code. We consider *de novo* questions regarding statutory authority. *People v. Alexander,* 369 Ill. App. 3d 955. 957 (2007). We conclude that the Code explicitly authorizes the imposition of a no-contact order as a condition of detention.

**¶** 30     The Code, as amended, takes a special interest in protecting crime victims. To effectuate this end, section 110-6.1(m)(2), specifically, states that, "[i]f the defendant is denied pretrial release, the court may impose a no contact provision with the victim or other interested party that

shall be enforced while the defendant remains in custody." 725 ILCS 5/l 10-6.l(m)(2) (West 2022).

¶ 31 Thus, the Code explicitly authorizes the circuit court to impose a no-contact provision during a defendant's det_ention. Accordingly, the ci_rcuit court did not exceed i_tstatutory authority by imposing such a condition here.

¶ 32                                    III. CONCLUSION

¶ 33 We affirm the judgment of the circuit court of Kane County.

¶ 34 Affirmed.

¶ 35 PRESIDING JUSTICE McLAREN. specially concurring:

36 The majority states: "We will not, however, address the issues raised only in he notice of appeal and not included in OSAD's memoranda. See *People v. Forthenberry.* 2024 IL App (5th) 231002, ¶ 41-42 (finding that OSAD's memorandum controls the issues addressed on appeal)." *Supra* 16. I submit that the *ra tio decidendi* in *Forthenberry* is nuanced and contains at least one exception Uwisdiction):

> "As — matter of practicality and considering the long-standing principles of appellate procedure, we find that, if a memorandum is filed, it will be the controlling document for issues or claims on appeal and *we will not reference the notice of appeal to seek out further arguments not raised in the memorandum, except in limited circumstances. e.g., to determine jurisdiction.* The memorandum must contain some form of argument for each issue presented, along with justification for claiming entitlement to relief-like references to the record, evidence presented, or, if possible, legal authority. See Ill. S. Ct. R. 341(h) (eff. Oct. 1, 2020). The memorandum cannot simply reference or direct the court to the notice of appeal for its argument.

. 'Rule 604(h) requires the notice of appeal to include a description of the r lief to be equested *"and the grounds for the relief requested."'* (Emphasis in original.) *[People v.] Inman,* 2023 IL App 4th) 230864, ii 1 (quoting Ill. S. Ct. R. 604(h)(2) (eff. S pt. 18, 2023)). Accordingly, 'some form of argument is required, along with justification for claim ing entitlement to relief-like references to the record, the evidence prese nted, or, if pos ible, legal authority.' *Id.* A reviewing court 'caQnot be expected to form4late an argument for defendant out of whole cloth.' *Id.* 13. 'The appellate court is ,not a depository in which the appellan, may dump the burden of argument and .research.' *Thrall Car Manufacturing Co. v. Lindquist,* 145 Ill. App. 3d 712, 719 (1986). As a reviewing court, we are entitled to have the issues clearly defined, pertinent author.ity cited,,an,d a cohesive legal argument presented. *Walters v. Rodriguez,* 2011 IL App (1st) 10 488, 5." (Emphasis added.) *People v. Forthenberry,* 2024 IL App (5th) 231002, ,i 42-43.

,i 37 I submit that checked boxes in the notice of appeal are the equivalent of the issues raised in an appellate brief. See Ill. S. Ct. R. 341(h)(3) (eff. Oct. 1, 2020). As such, the issues are claims of error. If there is additional elaboration, then there might be additional argument, citation to authority, or something more specific than the conclusory claim in the text accompanying the checked box. I believe that we have the authority to view the record to see if there is an insufficiency or related error. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.,* 63 Ill. 2d 128, 133 (1976) ("We do not feel that a court of review should be compelled to serve as an advocate for the appellee or that it should be required to search the record for the purpose of sustaining the judgment of the trial court. *It may, however, ff justice requires, do so."* (Emphasis added.)).

38    If a review of the record shows any evidence to support the jud ment, *vis-a-v{s* no evidence to support the judgment then, if there is a failure to cite the record or authority or to make any cohesive argument, a forfeiture should be declared. This court is not to advocate o b y _ h a l f of any party, as stated repeatedly above. If the notice of appeal and the appellant's memorandum do not fulfill_the_: quir ments involved in an appeal generally, then forfeiture is appropriate. But this forfeiture is not due to checking a box or insufficient elaboration. Rather it is because we are not advocates and the appellant has failed to sustain on review one or more of his burdens as to a claim set forth in the notice of appeal.

,i 39    I have reviewed the record regarding defendant's being a danger to the safety of a person or the community and whether there is any condition or combination thereof that will allow for release. There is evidence in the record supporting the judgment. Accordingly, we should declare a forfeiture due to a failure to cite authority or the record or to make a cohesive argument, and because we are not advocates.[2] Per *Forthenberry,* I believe we have jurisdiction.

---

[2]*Rollins,* 2024 IL App (2d) 230372, cites *Forthenberry* for the proposition of abandonment as an alternative default. The majority then repeats the *Rollins* misnomer of abandonment. Curiou ly, *forthenberry* does not contain the term "abandonment." Rather, it discusses the default as a forfeiture as I set forth i my special concurrence. I submit that *Rollins* goes oo far in concluding this is an abandonment, rather than a forfeiture, as I have argued herein.

*People v. Acosta,* 2024 IL App (2d) 230475

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, Nos. 23-CF-2319, 23-CF-2323; the Hon. Elizabeth K. Flood, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Carolyn R. Klarquist, and Michael H. Orenstein, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Patrick Delfino and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |