2025 IL App (2d) 240222-U
No. 2-24-0222
Order filed August 28, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 07-CF-1151 |
| WILLIE L. WALLS, | ) ) ) | Honorable Daniel B. Shanes, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE Birkett delivered the judgment of the court.
Presiding Justice Kennedy and Justice Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*:  Defendant's 43-year sentence complies with both the United States and Illinois Constitutions.

¶ 2   Defendant, Willie L. Walls, appeals his 43-year sentence for the first-degree murder of Herman Allison, which took place in March 2007, when defendant was 16 years old. Specifically, defendant argues that his sentence is unconstitutional under the United States and Illinois Constitutions because it amounts to a *de facto* life sentence imposed upon a minor without a meaningful opportunity for parole. Alternatively, defendant contends that his sentence is unconstitutionally disproportionate to the offense and his rehabilitative potential. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      This court previously set forth the facts underlying defendant's conviction on direct appeal. *People v. Walls*, 2020 IL App (2d) 130761-B. There, we affirmed defendant's conviction but vacated his sentence because the trial court had failed to consider his youth and attendant characteristics during sentencing, as required by our supreme court in *People v. Holman*, 2017 IL 120655. We remanded the matter so the trial court could sentence defendant in accordance with section 5-4.5-105 of the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-105 (West 2020)).

¶ 5      On November 15, 2023, the trial court commenced a new sentencing hearing. It took judicial notice of the prior sentencing hearing, and the State presented two victim impact statements—written by Allison's brother and sister—to the court. On March 6, 2024, during the continued hearing, the State read into evidence two additional victim impact statements from Allison's daughter and wife. The State presented no further aggravating evidence.

¶ 6      In mitigation, defendant called his aunts, Johnnie Gooden and Cherry Walls, who testified to the dire circumstances of defendant's youth, characterizing him as an "easily manipulated" young man. In recent years, however, both aunts noticed positive changes in defendant, noting his pursuit of his GED, his new interest in the Bible, and renewed family support. Gooden opined that recent tragedies in the family—including the loss of defendant's grandparents, sister, and more— had solidified a new appreciation for life in defendant.

¶ 7      Tarielle Walls, defendant's sister, testified to their upbringing. According to Tarielle, both siblings were "basically on [their] own" from a young age, as their parents "[were not] around." Tarielle believed that their environment was especially challenging for defendant due to his younger age and malleability. Tarielle agreed with Gooden that, following numerous intrafamily deaths, defendant had developed a greater appreciation for life.

¶ 8    Rolan Miller, defendant's cousin, next testified as to his and defendant's maturation into adulthood. He confirmed Gooden's and Cherry's belief that defendant now benefitted from a strong family support system, in contrast to his youth. Miller also witnessed defendant's newfound appreciation for life.

¶ 9    Defendant's father, Willie Walls Jr., testified next. Walls Jr. acknowledged that he and defendant's mother were largely absent throughout much of defendant's childhood. However, he noted that, unlike before, defendant's family members had overcome their own struggles and could adequately support defendant to nurture positive change. Walls Jr. had recognized a maturation in defendant in the years since defendant killed Allison.

¶ 10    Following his father's testimony, defendant read a letter—written by his mother, Wanda Gooden—to the court. Gooden echoed the other mitigating witnesses' testimonies, stating that defendant had matured significantly during incarceration and that he had learned from his previous mistakes.

¶ 11    In a statement of allocution, defendant apologized to both Allison's family and his own for the hardships he caused. He professed a newfound appreciation for life and noted that, since being incarcerated, he had engaged in schooling, anger management classes, and self-reflection. Defendant implored the court for another chance at life, so that he could "get out in real life and make [his] family proud."

¶ 12    The parties made closing arguments. The State acknowledged the evolving views on brain science in juvenile sentencing, but emphasized other factors relevant to sentencing, such as the fact that defendant's "encounter with Herman Allison *** was not [defendant's] first time with a gun." According to the State, "[i]t was not his first time discharging a gun. It was not his first time he was in trouble because of his decisions to shoot a gun. It was the second time." Thus, while

defendant may have lacked maturity when he killed Allison, the State contended that, based on his prior experiences, he should have anticipated that his actions could result in death. The State conceded that, while defendant was not alone in the scheme to rob Allison, he alone made the decision to corner Allison with a firearm.

¶ 13    The State detailed defendant's criminal conduct while he was incarcerated. In 2017, "when [defendant] was 27 years old, *** he was charged with and convicted of aggravated battery to a correctional officer." The State described the offense as particularly grave, as it involved numerous inmates and multiple correctional officers. Given his criminal history, the State suggested that 43 years' incarceration may be a suitable sentence, although "the [c]ourt would be supported by law" in sentencing defendant to a longer term. The State further argued that, in either event, given "recent changes in the law," defendant could apply for parole "[i]n as little as three years."

¶ 14    Defendant argued that his age, maturity, family dynamics, and negative peer pressure warranted a lenient sentence. Defendant further argued that his renewed family support, completion of his GED, and psychiatric treatment all reflected his rehabilitative potential. Consequently, defendant sought a sentence in the approximate range of 25 years.

¶ 15    The court described how it had considered "everything before it," including defendant's prior sentencing hearing, the presentence investigation report (PSI), all statutory and non-statutory factors in aggravation and mitigation, and the "tremendous evidence that was admitted by both sides." Specifically, in light of recent statutory changes, the court also considered defendant's:

> "age, impetuosity, level of maturity at the time of the offense, including [his] ability to consider risks and consequences of behavior, the presence of cognitive or developmental disability or both, if any, [and] whether the person was subjected to outside pressure, including peer pressure, familial pressure or negative influences."

On top of those factors, the court also considered defendant's:

"potential for rehabilitation, the circumstances of the offense, [defendant's] degree of participation and specific role in the offense, including the level of planning by *** defendant before the offense, whether [defendant] was able to meaningfully participate in his or her defense, [defendant's] prior juvenile or criminal history, [defendant's] involvement in the child welfare system, involvement [of defendant] in the community, and the evaluation of [defendant] conducted by a qualified health professional, and any other information that the [c]ourt finds relevant and reliable, including an expression of remorse, if appropriate."

¶ 16 Specifically, the court considered that defendant was raised in dire circumstances where violence was normalized. At approximately 13 years old, defendant perpetrated his "first crime of violence," shooting another individual in the face. Defendant pleaded guilty to aggravated discharge of a firearm and was on parole for this offense when he was pressured to rob Allison. Although others were involved with Allison's robbery and murder, defendant nonetheless formed "the requisite mental state to commit the offense of first-degree murder." As such, the court was concerned with defendant's "impulse control" and "violence," especially given his conviction for aggravated battery of a correctional officer. Because of his continued, violent misconduct, the court found it inappropriate to reduce defendant's sentence for Allison's murder. Still, in light of his family members' testimonies, the court declined to increase defendant's sentence, despite his later misconduct. Thus, the court again imposed a 43-year sentence, to be followed by three years of mandatory supervised release.

¶ 17 On March 11, 2024, defendant filed his motion to reconsider his sentence. On March 21, 2024, while hearing the motion, the court offered further insight into its sentence, noting that

defendant's "incorrigibility, to use a *Miller* term, is clearly established by the record, including *** not only *** the facts and circumstances of this case and not only the fact that he was on parole when he committed this offense ***, but the fact that the offense for which he was on parole stemmed out of him walking up to somebody else and shooting them in the head." The court denied defendant's motion. Defendant timely appeals.

## II. ANALYSIS

¶ 18 Defendant makes two arguments on appeal. First, defendant argues that his *de facto* life sentence violates both the United States and Illinois Constitutions because he has no meaningful opportunity for release on parole. Second, he argues that his sentence is unconstitutional because it was disproportionate to the nature of the offense and his rehabilitative potential. We address both these arguments in turn.

¶ 19 "The constitutionality of a statute is analyzed according to well-established principles." *Peoply v. Coty*, 2020 IL 123972, ¶ 22.

> "Statutes are presumed constitutional, and the party challenging the constitutionality of a statute has the burden of clearly establishing its invalidity. A court must construe a statute so as to uphold its constitutionality if reasonably possible. The constitutionality of a statute is a question of law subject to *de novo* review." *People v. Gray*, 2017 IL 120958, ¶ 57.

¶ 20            A. Meaningful Opportunity for Parole

¶ 21 Defendant, seemingly assuming that his crimes did not reflect permanent incorrigibility, first contends that his 43-year prison sentence is unconstitutional under *Miller v. Alabama*, 567 U.S. 460 (2012), because the Illinois youth parole statute (730 ILCS 5/5-4.5-115 (West 2022)) lacks a meaningful opportunity for release, thereby rendering his sentence a *de facto* life term. Defendant recognizes that, in *People v. Cavazos*, 2023 IL App (2d) 220066, this court had

previously found that the "Illinois parole scheme affords juvenile offenders a constitutional and meaningful opportunity for release before serving a *de facto* life sentence," thus precluding his argument. Nonetheless, defendant requests that we reconsider *Cavazos*.

¶ 22    As a threshold matter, however, we briefly note the State's argument that defendant forfeited these arguments. Defendant responds that we may review his contentions under the doctrines of "preserved error, plain error, or as the result of ineffective assistance of counsel." Forfeiture is a limitation on the parties and not a reviewing court. *People v. Acosta*, 2024 IL App (2d) 230475, ¶ 15. Here, because the issues are straightforward, we will exercise our discretion to entertain defendant's arguments. *Id.*

¶ 23    In *Miller*, the United State Supreme Court held that the "Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." 567 U.S. at 479. However, the Supreme Court did not categorically ban life sentences for all juvenile offenders; rather, it required that a court consider a juvenile offender's diminished culpability and greater capacity for change before imposing a life sentence. *Id.* The Supreme Court later found that *Miller's* prohibitions amounted to a substantial rule of constitutional law requiring retroactive application. *Montgomery v. Louisiana*, 577 U.S. 190, 208-09 (2016). In *Montgomery*, the Supreme Court also clarified that "*Miller* did bar life without parole *** for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility." *Id.*

¶ 24    In *People v. Reyes*, 2016 IL 119271, ¶ 10, our supreme court interpreted *Miller* to prohibit the imposition of mandatory, *de facto* life-sentences that carry no possibility of parole. In *People v. Buffer*, 2019 IL 122327, ¶ 40, our supreme court further held that a prison sentence exceeding 40 years qualifies as a *de facto* life sentence. Thus, in conjunction with *Miller*'s holding, courts

are prohibited from imposing a mandatory sentence exceeding 40 years on a juvenile offender without first considering the offender's "youth and its attendant characteristics." *Id.* ¶ 42.

¶ 25 Given this framework, defendant argues that his 43-year sentence was unconstitutional under *Miller* because it constituted a *de facto* life sentence without any realistic possibility of parole. Recognizing that, under the current parole scheme, he will *be* eligible for parole in a few years, defendant nonetheless cites *People v. Gates*, 2023 IL App (1st) 211422, ¶ 47, for the proposition that "Illinois' youthful offender parole system is not meaningful and therefore 'cannot be used to remedy a *de facto* life sentence.' " (Emphasis in original.) Thus, according to defendant, his sentence constituted an impermissible *de facto* life sentence under *Miller* and *Buffer*, despite his illusory opportunity for parole. Defendant noted that our supreme court was expected to decide whether the current parole scheme affords defendants a meaningful opportunity in its review of the First District's decision in *People v. Spencer*, 2023 IL App (1st) 200646-U. After briefing was completed, our supreme court rendered its decision on the appeal. *People v. Spencer*, 2025 IL 130015.

¶ 26 *Spencer* involved a criminal defendant who, after trial, was found guilty of first-degree murder, attempted murder, and home invasion for offenses that occurred when he was 20 years old. *Id.* ¶ 5. He was also found guilty of personally charging a firearm during the attempted murder and home invasion. *Id.* On January 31, 2020, when the defendant was 28 years old, his sentencing hearing commenced. *Id.* ¶ 9.

> "[The defendant's] crimes subjected him to consecutive prison terms of 20 to 60 years for first degree murder [citation], 6 to 30 years for attempted murder plus a mandatory firearm enhancement of 20 years [citations]; and 6 to 30 years for home invasion plus a mandatory firearm enhancement of 20 years [citations]. Because [the defendant] was under

21 when he committed the offenses, he [was] eligible for parole after serving 20 years of the aggregate sentence." *Id.* ¶ 15. The circuit court sentenced the defendant to consecutive prison terms of 50 years for his murder conviction, 25 years for the attempted murder, and 25 years for home invasion, mistakenly assuming that the minimum sentence for the latter two crimes was 21 years. *Id.* ¶ 16.

¶ 27 The defendant appealed, arguing that his sentence was unconstitutional. *Spencer*, 2023 IL App (1st) 200646-U, ¶¶ 135-37. Specifically, he argued that his 100-year sentence, which he too had characterized as a "*de facto* life sentence," violated the Illinois proportionate penalties clause, and that the Illinois youth parole statute did not "cure the imposition of an otherwise unconstitutional sentence." *Spencer*, 2025 IL 130015, ¶ 23. However, our supreme court disagreed, explicitly finding that the Illinois parole statute provided youthful defendants a meaningful opportunity to become eligible for parole prior to spending 40 years in prison. *Id.* ¶ 35. Thus, according to the court, the availability of parole for a youthful defendant prevents a sentence exceeding 40 years from being considered a *de facto* life sentence. *Id.* ¶¶ 39-40.

¶ 28 Because *Spencer* makes clear that the Illinois youth parole statute provides "a meaningful opportunity to obtain release before [one] spends 40 years in prison," defendant's argument— which rests on the premise that his sentence constitutes a *de facto* life sentence—fails.

¶ 29 B. Proportionate Penalties Clause

¶ 30 Next, defendant alternatively argues that we should vacate or reduce his sentence because it is unconstitutionally disproportionate to the nature of the offense and his rehabilitative potential. The United States Supreme Court "has held that, to comply with the [E]ighth [A]mendment, sentences must be 'graduated and proportioned.' " *People v. Dorsey*, 2021 IL 123010, ¶ 37 (citing *Roper v. Simmons*, 543 U.S. 551, 560 (2005)). Similarly, article I, section 11, of the Illinois

Constitution states, "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. Our proportionate penalties clause is coextensive with the cruel and unusual punishment clause. *In re Rodney H.*, 223 Ill. 2d 510, 518 (2006). The Supreme Court has found that "children are constitutionally different from adults for sentencing purposes," given their diminished culpability and greater prospects for reform. *Miller*, 567 U.S. 460 at 471. Therefore, they are less deserving of the most severe punishments. *Id.*

¶ 31    In sentencing a juvenile defendant, courts are constitutionally required to consider all factors in aggravation and mitigation. *People v. McKinley*, 2020 IL App (1st) 191907, ¶ 72. These factors have since been codified, with the Code now requiring sentencing courts to consider:

"(1) the person's age, impetuosity, and level of maturity at the time of the offense, including the ability to consider risks and consequences of behavior, and the presence of cognitive or developmental disability, or both, if any;

(2) whether the person was subjected to outside pressure, including peer pressure, familial pressure, or negative influences;

(3) the person's family, home environment, educational and social background, including any history of parental neglect, domestic or sexual violence, sexual exploitation, physical abuse, or other childhood trauma including adverse childhood experiences (or ACEs);

(4) the person's potential for rehabilitation or evidence of rehabilitation, or both;

(5) the circumstances of the offense;

(6) the person's degree of participation and specific role in the offense, including the level of planning by the defendant before the offense;

(7) whether the person was able to meaningfully participate in his or her defense;

(8) the person's prior juvenile or criminal history;

(9) the person's involvement in the child welfare system;

(10) involvement of the person in the community;

(11) if a comprehensive mental health evaluation of the person was conducted by a qualified mental health professional, the outcome of the evaluation; and

(12) any other information the court finds relevant and reliable, including an expression of remorse, if appropriate. However, if the person, on advice of counsel chooses not to make a statement, the court shall not consider a lack of an expression of remorse as an aggravating factor." 730 ILCS 5/5-4.5-105(a) (West 2022).

Further,

"[t]o succeed on a proportionate penalties claim, a defendant must show either that the penalty imposed is cruel, degrading, or so wholly disproportionate to the offense that it shocks the moral sense of the community; or that it differs from the penalty imposed for an offense containing the same elements." *People v. Klepper*, 234 Ill. 2d 337, 348 (2009).

¶ 32     "Generally, we review for an abuse of discretion a trial court's sentencing decision." *Cavazos*, 2023 IL App (2d) 220066, ¶ 33. Thus, the State contends that, because "defendant is challenging the court's application of statutory factors or the weight that the court has given to evidence that pertains to those factors," we must review "the court's decision *** for an abuse of discretion." (citing *People v. Johnson*, 2019 IL 122956, ¶¶ 38-39 (defendant argued his sentence resulted from improper double enhancement)). However, the State overlooks the constitutional nature of defendant's contentions. Defendant does not just argue that the trial court misapplied any sentencing factors; rather, defendant argues that, in light of his youth, the nature of the offense, and his rehabilitative potential, his sentence was unconstitutional under the proportionate penalties

clause. Given this constitutional dimension, "[w]e review *de novo* whether [his] sentence violates the proportionate penalties clause." *Cavazos*, 2023 IL App (2d) 220066, ¶ 63.

¶ 33    Here, defendant argues:

"Considering defendant's low intellectual functioning, his disadvantaged and dysfunctional childhood, and the United States Supreme Court's recent findings regarding juveniles' diminished culpability and enhanced capacity for rehabilitation, the trial court's imposition of a 43-year sentence in this case [was] disproportionate to the offense and excessive."

Defendant notes that he was only 16 years old at the time of the offense and that two older men had "recruited" and "facilitated his attempt to rob" Allison, leading to Allison's killing. Defendant further notes that his presentence investigation report reveals defendant's low IQ, "dysfunctional family dynamics and upraising," and that, since being incarcerated, he had obtained his GED. Defendant asserts that these facts "preclude a sentencing court from imposing a *de facto* life sentence for the instant offense." We disagree.

¶ 34    It is true, as defendant argues, that his presentence investigation report did contain several examples or notations of defendant's lower-than-average IQ, immaturity, impulsivity, and troublesome upbringing. It, along with the overarching record, also strongly suggest that defendant was induced into robbing—but not necessarily killing—Allison by at least one other party, who was an adult. Indeed, the record reflects that the circuit court was aware of these facts and all of the applicable, mitigating *Miller* factors. However, defendant severely downplays the numerous aggravating factors supporting his 43-year sentence. At the time of the instant offense, defendant was on parole for another shooting he had committed when he was 13 years old. Additionally, according to the presentence investigation report, defendant "has had multiple disciplinary issues

since his initial incarceration." He had spent "significant amounts of time in segregation for possessing drugs and paraphernalia," "assaulting another inmate," possessing "a sharpened plastic utensil," "assaulting a correctional officer and causing an injury," "possessing "a sharpened metal utensil," and property damage. He had also been reprimanded for "sexual misconduct."

¶ 35    As the circuit court suggested, these aggravating factors essentially counterweighed any mitigating factors based on defendant's youth, rough upbringing, and rehabilitative potential. Otherwise put, while defendant's youth and circumstances at the time of the offense might ordinarily warrant a more lenient sentence, his criminal history and post-incarceration conduct evince a troubling—and often violent—resistance to rehabilitation. Thus, we find that the circuit court's imposition of a 43-year sentence, which fell approximately in the middle of his applicable sentencing range, was proportionate to the nature of offense and defendant's youthful characteristics and does not shock moral conscience. *Klepper*, 234 Ill. 2d at 348. This conclusion is further reinforced by *Spencer*, which confirms defendant's sentence cannot be characterized as a *de facto* life sentence, as he has been afforded a meaningful opportunity for parole though application of the Illinois youth parole statute. *Spencer*, 2025 IL 130015, ¶¶ 39-40.

¶ 36                                      III. CONCLUSION

¶ 37    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 38    Affirmed.