NOTICE

Decision filed 04/16/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 240141-U

NO. 5-24-0141

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Vermilion County. |
| | ) | |
| v. | ) | No. 24-CF-34 |
| | ) | |
| MICHAEL MYERS, | ) | Honorable |
| | ) | Derek J. Girton, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE VAUGHAN delivered the judgment of the court.
Justices Barberis and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held:* The trial court's order granting the State's petition to deny pretrial release is affirmed where the trial court's findings were not against the manifest weight of the evidence, the order denying pretrial release was not an abuse of discretion, and either insufficient argument, or no argument, was presented regarding defendant's claims of an unfair hearing.

¶ 2    Defendant timely appeals the trial court's order denying his pretrial release pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). For the following reasons we affirm the trial court's order.

1

¶ 3                                I. BACKGROUND

¶ 4     On January 16, 2024, defendant was charged by information with the following six counts: (1) unlawful possession of methamphetamine with intent to deliver (more than 100 grams and less than 400 grams) in violation of section 55(a)(1) of the Methamphetamine Control and Community Protection Act (720 ILCS 646/55(a)(1) (West 2022)), a Class X felony; (2) unlawful possession of methamphetamine (more than 100 and less than 400 grams) in violation of section 60(a) of the Methamphetamine Control and Community Protection Act (*id.* § 60(a)), a Class X felony; (3) unlawful possession of a weapon by a felon (based on Vermilion case No. 03-CF-582) in violation of section 24-1.1(a) of the Criminal Code of 2012 (720 ILCS 5/24-1.1(a) (West 2022)), a Class 2 felony; (4) unlawful possession with intent to deliver controlled substance (clonazepam) in violation of section 401(d) of the Illinois Controlled Substances Act (720 ILCS 570/401(d) (West 2022)), a Class 2 felony; (5) unlawful possession of a firearm with defaced serial number, in violation of section 24-5 of the Criminal Code of 2012 (720 ILCS 5/24-5 (West 2022)), a Class 3 felony; and (6) unlawful possession controlled substance (clonazepam) in violation of section 402(d) of the Illinois Controlled Substances Act (720 ILCS 570/402(d) (West 2022)), a Class 4 felony. A warrant for defendant's arrest was issued on January 17, 2024.

¶ 5     Defendant was arrested on January 18, 2024. The public defender was appointed to represent defendant on January 19, 2024.

¶ 6     On January 19, 2024, a pretrial investigation report was filed that revealed defendant was 39 years old, divorced, with three minor children. He had been living with his fiancée for four years in Danville. He advised that his employment involved "freelance" odd job work that varied from working on cars to trimming trees. He reported a history of drug abuse (methamphetamine) and mental health issues (bipolar disorder and depression). His criminal history included pending

charges for burglary and criminal damage to property (case No. 23-CF-684) and possession of methamphetamine and controlled substances (case No. 23-CF-264). He also a previous charge of possession of methamphetamine (case No. 22-CF-74) for which he received 24 months' probation on November 2, 2022, and was ordered to drug court. However, according to the investigatory report, drug court had since been revoked and the case was now pending.

¶ 7    Defendant also had four prior convictions for possession of methamphetamine (case Nos. 17-CF-235, 15-CF-209, 11-CF-710, and 04-CF-478), aggravated battery with great bodily harm (case No. 07-CF-505), burglary (case No. 03-CF-582), possession of controlled substance (case No. 05-CF-70), domestic battery with bodily harm (case No. 04-CM-170), retail theft (case No. 03-CM-607), and two counts of battery (case No. 01-CM-739). The report indicated that defendant was on probation at the time of the current arrest. The Virginia Pretrial Risk Assessment Instrument-Revised (VPRAI-R) scored defendant at a 13 out of 14 and classified him as a Level 6 out of 6 with a 37.1% likelihood of recidivism while on pretrial release.

¶ 8    On January 19, 2024, the State filed a verified petition to deny defendant pretrial release. The petition alleged that defendant was charged with a qualifying offense and posed a real and present threat to the safety of any person, persons, or the community. The petition further alleged that no condition, or combination of conditions, could mitigate defendant's dangerousness.

¶ 9    The hearing on the State's petition was set for January 22, 2024. At that time, the State indicated that it did not see that the petition had been filed and would get one on file if one was not filed. Private counsel was obtained and entered her appearance for defendant and advised the court that she had not seen the petition either and that defendant's prior counsel had the file. Defense counsel indicated that if the State did not have a petition on file, then she would proceed with a motion to release defendant. Conversely, if there was a petition on file, defense counsel

requested a continuance. The public defender requested that his appointment be vacated, and the court vacated the appointment. Thereafter, the court took a brief recess to determine if a petition had been filed.

¶ 10    When the parties returned, the court was advised that the State filed a petition the previous Friday *instanter* and filed a second identical petition the day of the hearing. Defense counsel objected, stating the petition was untimely because the State failed to provide a copy of the filing at the Friday hearing as none appeared in the public defender's file. Counsel further argued that since it was an untimely filing, defendant should be released. The court reviewed its file and found the filing on January 19, 2024, was timely. When asked if defense counsel was ready to proceed, counsel argued that the record failed to reflect the filing and further moved to strike the second *instanter* petition filed with the court that day as untimely. The court asked defense counsel if she was asking it to reconsider its previous decision and counsel said, "Yes." The court denied the requested reconsideration. Thereafter, defense counsel requested a continuance and that the court order the State to provide her with a file-marked copy of the original petition "they say was tendered on Friday." The court continued the hearing.

¶ 11    Following the hearing, defense counsel filed a motion to dismiss the State's verified petition alleging the State's petition was untimely. In support, counsel argued that defendant was previously arrested for burglary on November 3, 2023, at which time the car he was driving was impounded. Following an interview with defendant, in which he informed police of a different person who committed the burglary, defendant was released with conditions. The motion contended that the sheriff's department did not search the impounded vehicle until November 9, 2023, when they received consent from the registered owner. Upon commencement of the search, investigators found methamphetamine and a handgun, at which time they obtained a search

4

warrant for the vehicle and retrieved the items. Thereafter, on January 16, 2024, the State filed the additional charges under a new case number and sought and obtained a warrant for defendant's arrest. The motion argued that the State should have to take the new charges back to the grand jury in 23-CF-684, since those charges arose from the same course of conduct as the original burglary. For those reasons, the motion contended that the State's petition to deny pretrial release was required to be filed by November 24, 2023, in order to be timely.

¶ 12   A hearing on the pending motion and petition was held on January 24, 2024. Defense counsel confirmed that the record now reflected the filing of the State's January 19, 2024, petition and requested dismissal of the State's second verified petition that was filed on January 22, 2024. The court dismissed the State's January 22, 2024, petition. Thereafter, defense counsel presented argument on the motion to dismiss by reading the allegations to the court. The court responded by stating that the previous burglary charge was not a detainable offense under the statute. The State argued that the charge in the instant case was not burglary. It averred defendant was charged with possession of a weapon and methamphetamine with intent to deliver, neither of which had anything to do with burglary. The court denied defense counsel's motion stating that the State could "take the time they think is necessary to conduct the investigation." It further stated that defendant was not detained while the State investigated, and the new charges were detainable offenses.

¶ 13   The court then proceeded with the State's petition to deny pretrial release. The State proffered that defendant was arrested for burglary the previous November 2023 and advised police during the interview that there was an additional burglar and evidence of that burglary was in the car. The car defendant was driving was eventually searched, at which time, officers were looking for the Halloween mask and the items revealing evidence of the burglary. When looking for those items, the officers found other items and evidence consisting of five or six bags of

5

methamphetamine that amounted to more than 100 grams. The search also revealed 40 clonazepam pills and a semi-automatic handgun with one bullet in the chamber. The State also proffered defendant's Class 2 felonies were subject to Class X sentencing based on his criminal history, which included a conviction for burglary in 2003 and a conviction for possession of methamphetamine. The State proffered that defendant was heard on a jailhouse tape talking to his girlfriend about the handgun and the methamphetamine in the vehicle. Defendant told her that he would be in trouble if they found those and asked her to get rid of them. He stated the primary owner of those materials was someone else but suggested he knew exactly where the gun and methamphetamine were located in the car. Subsequent to that, defendant confessed that the methamphetamine was for himself. He also confessed that he knew the gun was in the car.

¶ 14    The State further addressed defendant's criminal history, noting the pending burglary charges and two Class 1 felonies for methamphetamine possession. Defendant's criminal convictions included possession of methamphetamine in 2017 (six years Illinois Department of Corrections (IDOC)), possession of methamphetamine in 2015 (three years IDOC), possession of methamphetamine in 2011 (30 months IDOC), aggravated battery in 2007 (five years IDOC), possession of controlled substance in 2005 (two years IDOC), domestic battery in 2004, possession or manufacture of controlled substance in 2004 (four years IDOC), Class 2 burglary in 2003 (four years IDOC), and battery in 2001.[1] Given defendant's history, the State proffered that nothing short of detention would protect the community and asked the court to detain defendant.

¶ 15    Defense counsel proffered that the telephone calls alluded to by the State indicated that someone else—who was previously loaned the car—put the items in the car and had the vehicle

[1]According to the pretrial investigatory report, defendant received court supervision and a fine on the 2001 battery charge.

for approximately 24 hours before defendant was stopped in the vehicle. Counsel disagreed that the pending charges were eligible for Class X sentencing. She agreed that defendant had a criminal history but indicated the State failed to show, other than by assertion, that defendant posed a real and present threat to the community, or what that real and present threat was. Counsel contended that defendant was arrested for burglary and there were items found in his car. However, those facts alone did not make him a real and present threat. Counsel further argued that the State failed to prove that no condition, or combination of conditions, could mitigate defendant's dangerousness.

¶ 16    Counsel proffered that defendant would have a job available if he was released and that putting him on GPS would mitigate any threat. In support, counsel argued that this was not a situation where defendant committed a new offense on pretrial release. This was simply an elevation of some charges that were no different from when he was released the first time.

¶ 17    The court found there was clear and convincing evidence that the proof was evident and the presumption great that defendant committed a qualifying offense. The court further found "based on his criminal history, as well as the pending charges, that he does pose a threat to the community and that no condition or combination of conditions could mitigate that real and present threat." The court ordered the defendant detained and advised defendant of his appeal rights.

¶ 18    A written order of detention was filed on January 24, 2024. The order found the proof was evident or the presumption great that defendant committed the qualifying offense. The order further found that defendant posed a real a present threat to the safety of any person(s) or the community and no condition, or combination of conditions, could mitigate the real and present threat to the safety of any person or persons. The order found that less restrictive conditions would not assure the safety of any persons, or the community based on the "proffer presented by the

7

State" and "criminal history." Defendant timely appealed. Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023).

¶ 19                                    II. ANALYSIS

¶ 20     Pretrial release—including the conditions related thereto—is governed by statute. See Pub. Act 101-652, § 10-255 (eff. Jan. 1, 2023); Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023). A defendant's pretrial release may be denied only in certain statutorily limited situations. 725 ILCS 5/110-6.1 (West 2022). In order to detain a defendant, the State has the burden to prove by clear and convincing evidence that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense, (2) the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and (3) less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e).

¶ 21     In considering whether the defendant poses a real and present threat to the safety of any person or the community, *i.e.*, making a determination of "dangerousness," the trial court may consider evidence or testimony concerning factors that include, but are not limited to, (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether at the time of the current offense or any other

8

offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Code (*id.* § 110-5). *Id.* § 110-6.1(g).

¶ 22 To set appropriate conditions of pretrial release, the trial court must determine, by clear and convincing evidence, what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). In reaching its determination, the trial court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the person's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* The statute lists no singular factor as dispositive. See *id.*

¶ 23 Our standard of review of pretrial release determinations is twofold. The trial court's factual findings are reviewed under the manifest weight of the evidence standard. *People v. Swan*, 2023 IL App (5th) 230766, ¶ 12. " 'A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented.' " *Id.* (quoting *People v. Deleon*, 227 Ill. 2d 322, 332 (2008)). We review the trial court's ultimate determination regarding the denial of pretrial release for an abuse of discretion. *Id.* ¶ 11. "An abuse of discretion occurs when the decision of the circuit court is arbitrary, fanciful, or unreasonable, or when no reasonable person would agree with the position adopted by the trial court." *Id.*; see *People v. Heineman*, 2023 IL 127854, ¶ 59. "[I]n reviewing the circuit court's ruling for an abuse of discretion, we will not substitute our judgment for that of the circuit court, 'merely because we would have balanced the appropriate factors differently.' "

*People v. Simmons*, 2019 IL App (1st) 191253, ¶ 15 (quoting *People v. Cox*, 82 Ill. 2d 268, 280 (1980)).

¶ 24  Defendant's notice of appeal requests reversal of the trial court's order denying his motion to dismiss the State's petition and reversal of the trial court's order denying defendant pretrial release. Defendant listed four issues on review: (1) whether the State failed to meet its burden in proving defendant posed a real and present threat to the safety of any persons or the community; (2) whether the State failed to meet its burden of proving that no condition or combination of conditions could mitigate defendant's dangerousness; (3) whether the court erred in determining that no condition, or combination of conditions, would reasonably ensure defendant's appearance for later hearing or prevent defendant from being charged with a subsequent felony or Class A misdemeanor; and (4) whether the trial court erred in denying defendant's motion to dismiss the State's verified petition to deny pretrial release.

¶ 25  On March 6, 2024, defendant's counsel on appeal, the Office of the State Appellate Defender (OSAD), filed a Rule 604(h) memorandum. The memorandum argued that defendant presented no real or present threat to the safety of the community and that the trial erred in finding that no condition, or combination of conditions, could mitigate defendant's dangerousness.

¶ 26  The State filed a Rule 604(h) memorandum on March 29, 2024. Therein, the State ignores our standard of review (see *People v. Burke*, 2024 IL App (5th) 231167, ¶ 20) and instead claims our review is solely limited to determining whether the trial court's order denying pretrial release was an abuse of discretion. Thereafter, the State argued that defendant was charged with committing a qualifying offense, posed a real and present threat to the safety of the community, and that no less restrictive condition would avoid defendant's real and present threat to the safety of the community.

¶ 27    "As a matter of practicality and considering the long-standing principles of appellate procedure *** if a memorandum is filed, it will be the controlling document for issues or claims on appeal." *People v. Forthenberry*, 2024 IL App (5th) 231002, ¶ 42. This court will not address the issues listed in a notice of appeal unless they are also raised in any subsequently filed Rule 604(h)(2) memorandum. *Id.* Here, OSAD did not address the last two issues raised by defendant and therefore, we find those issues were forfeited.

¶ 28    Instead, we turn to the two issues raised by defendant in his notice of appeal and further addressed by OSAD. The first issue involves the court's finding that defendant posed a real and present threat to the community. In support, defendant argues that the State "merely added charges from the same day that Defendant had already been stopped for and charged." He further argued that the State proffered nothing to show that he posed a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case.

¶ 29    OSAD's memorandum concedes the State provided a basis for dangerousness, that being defendant's criminal history, but argues the State never attributed any of the prior offenses as a danger to the community. OSAD argues that prior convictions should be indicative of violent, abusive, or assaultive behavior and defendant's history was mostly drug crimes. Only three qualified as violent, abusive, or assaultive behavior and those occurred between 2001 and 2007. OSAD contends that, at most, defendant's criminal history was indicative of a risk of recidivism which did not endanger the community. We disagree.

¶ 30    The issue raised is one of evidentiary sufficiency. Typically, when considering the sufficiency of the evidence, "the reviewing court must view the evidence 'in the light most favorable to the prosecution.' " *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "This means the reviewing court must allow all

11

reasonable inferences from the record in favor of the prosecution." *Id.* In this case, the question becomes, " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact could have found'* " (emphasis in original) (*id.* at 278 (quoting *Jackson*, 443 U.S. at 319)) that the State proved by clear and convincing evidence that defendant posed a real and present threat to any person(s) or the community.

¶ 31    As noted above, the statute provides factors for the trial court's consideration in determining dangerousness. Included in those factors are the "nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense." See 725 ILCS 5/110-6.1(g)(1) (West 2022). Here, two of the offenses charged involved a weapon. One involved defendant's unlawful possession of a weapon due to his status as a felon and the other involved the unlawful possession of a weapon that was defaced to remove its identifying serial number. The second factor involves defendant's history and characteristics. *Id.* § 110-6.1(g)(2). This includes defendant's prior criminal and social history that may reveal a potential of violence.

¶ 32    While we agree that numerous convictions involved defendant's possession of methamphetamine, the criminal history also included convictions for aggravated battery with great bodily harm, domestic battery with bodily harm, and two counts of battery. Further, one of the current charges involved delivery of, or possession with intent to deliver, methamphetamine which the State proffered was based on how the methamphetamine was packaged. While defendant admitted the methamphetamine was his, he denied it was for his personal use, which would infer its distribution or delivery to a person in the community. Finally, the statute allows the court to consider whether the defendant was on probation, parole, aftercare release, mandatory supervised release or other release from custody pending trial, sentencing, appeal, or completion of sentence

12

at the time of the offense. *Id.* § 110-6.1(g)(8). Here, it was undisputed that defendant was on probation at the time of the offense. Based on this evidence, the trial court's finding that defendant posed a real and present threat to the community was not against the manifest weight of the evidence.

¶ 33    Defendant's second argument contends that the State failed to prove that no condition, or combination of conditions, would mitigate his dangerousness. In support, defendant argues that the State alleged nothing other than defendant's criminal record, and failed to argue why defendant could not be released on electronic monitoring. OSAD claims the trial court erred in finding that no condition, or combination of conditions, could mitigate defendant's dangerousness to the community where the State failed to point to anything in its proffer to address the issue. OSAD further complains that the State failed to address any mandatory or permissive conditions of release and offered no evidence or explanation why those conditions would be insufficient, beyond alluding to defendant's criminal history. Again, the issue is one of evidentiary sufficiency.

¶ 34    Contrary to the claims in defendant's notice of appeal and OSAD's memorandum, defendant's criminal history cannot be minimized. In determining which conditions of pretrial release, if any, would reasonably ensure the appearance of the defendant, the safety of persons and the community, and the likelihood of defendant's compliance with terms of pretrial release, the statute provides factors for the trial court's consideration. See *id.* § 110-5(a). Many of these are similar to those listed in section 110-6.1(g) that address a defendant's dangerousness. Those factors are addressed above and are equally relevant here; notably, the fact that defendant was on probation at the time of the alleged offense, his access to weapons despite his felon status, and possessing methamphetamine despite previous incarcerations for possessing methamphetamine. The State's proffer noted defendant's prior incarcerations and his current probationary status. This proffer

13

reveals a continued lack of compliance with the law and that nothing short of detention would protect the community. Further, defendant admitted the methamphetamine was his. That admission, as well as defendant's knowledge of the weapon in the car despite his felony status, also clearly indicates that neither defendant's prior incarcerations nor his current probationary status dissuaded him from continuing to participate in activities that could result in further incarceration. Accordingly, we cannot find that the trial court's reliance on the State's proffer and defendant's criminal history to conclude that no condition of pretrial release would mitigate defendant's dangerousness was against the manifest weight of the evidence.

¶ 35   Finally, OSAD also argues that the trial court erred in not explaining why it believed defendant would not comply with any condition of release. We again disagree. The trial court's order listed the basis for finding less restrictive conditions would not assure safety of any person or persons or the community as the proffer presented by the State and defendant's criminal history. Although the trial court's reasons were succinctly stated, given our review of both the State's proffer, and defendant's criminal history, the trial court's statement was sufficient.

¶ 36   None of the trial court's findings related to a qualifying offense, dangerousness, or a lack of condition, or combination of conditions, available to mitigate defendant's dangerousness were against the manifest weight of the evidence. As such, we hold that the trial court's ultimate disposition, denying pretrial release, was not an abuse of discretion.

¶ 37                                  III. CONCLUSION

¶ 38   For the reasons stated herein, the trial court findings were not against manifest weight of the evidence and its ultimate disposition was not an abuse of discretion. Therefore, we affirm the trial court's order.

¶ 39   Affirmed.

14